1  KELLY M. DERMODY (SBN 171716)
   JAHAN C. SAGAFI (SBN 224887)
2  LIEFF, CABRASER, HEIMANN
   & BERNSTEIN, LLP
3  275 Battery Street, 30th Floor
   San Francisco, California  94111-3339
4  Telephone:  (415) 956-1000
   Facsimile:  (415) 956-1008
5  E-mails:  kdermody@lchb.com
             jsagafi@lchb.com
6
   JAMES M. FINBERG (SBN 114850)          M. KIRBY C. WILCOX (SBN 78576)
7  PETER E. LECKMAN (SBN 235721)          JEFFREY D. WOHL (SBN 96838)
   ALTSHULER BERZON LLP                   MOLLY A. HARCOS (SBN 233556)
8  177 Post Street, Suite 300             PAUL, HASTINGS, JANOFSKY & WALKER LLP
   San Francisco, California  94108       55 Second Street, 24th Floor
9  Telephone: (415) 421-7151              San Francisco, California  94105
   Facsimile: (415) 362-8064              Telephone: (415) 856-7000
10 E-mails:  jfinberg@altshulerberzon.com Facsimile: (415) 856-7100
             pleckman@altshulerberzon.com E-mails:  kirbywilcox@paulhastings.com
11                                                  jeffwohl@paulhastings.com
                                                    mollyharcos@paulhastings.com
12 Attorneys for
   Plaintiff Ahmed Higazi                 Attorneys for
13                                        Defendant Cadence Design Systems, Inc.

14

15                       UNITED STATES DISTRICT COURT

16                      NORTHERN DISTRICT OF CALIFORNIA

17                            SAN JOSE DIVISION

18

19 AHMED HIGAZI, on behalf of himself     No. C-07-2813-JW
   and a class of those similarly situated,
20                                         **JOINT STIPULATION OF CLASS**
              Plaintiff,                   **SETTLEMENT AND CLASS**
21                                         **SETTLEMENT AGREEMENT AND**
        v.                                 **RELEASE**
22
   CADENCE DESIGN SYSTEMS, INC.,
23
              Defendant.
24

25

26

27

28

1    Subject to its terms and conditions and the approval of the Court, this Joint Stipulation of Class

2    Settlement and Class Settlement Agreement and Release (the "Settlement") is made and entered into by

3    and between plaintiff Ahmed Higazi ("Plaintiff"), individually and on behalf of the putative class, and

4    defendant Cadence Design Systems, Inc. ("Cadence").  Plaintiff and Cadence are jointly referred to in

5    this Settlement as the "Parties," and each of them as a "Party."

6    I.    **DEFINITIONS**

7    In addition to terms defined elsewhere in the Settlement, as used in this Settlement the following

8    terms have the meanings indicated below:

9    A.    "Action" means the civil action titled "*Ahmed Higazi, on behalf of himself and a class of*

10   *those similarly situated, Plaintiff, v. Cadence Design Systems, Inc., Defendant*," U.S.D.C., N.D. Cal.,

11   No. C-07-2813-JW.

12   B.    "CAFA Notice" means a notice of proposed settlement pursuant to the Class Action

13   Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715, substantially in the form attached to this Settlement

14   as Exhibit E.

15   C.    "Claimant" means a Class Member who has submitted a timely and valid Claim Form

16   pursuant to this Settlement.

17   D.    "Claim Form" means the form by which Class Members may claim their Settlement

18   Shares and consent to join the FLSA collective action, substantially in the form attached to this

19   Settlement as Exhibit C.

20   E.    "Class" means the class proposed by this Settlement, consisting of the current and former

21   Cadence employees who are listed by their Cadence employee identification numbers in Exhibit A to

22   this Settlement.  The Class is made up of all persons who work or worked for Cadence in a Covered

23   Position during the Covered Period and includes Plaintiff; and Raquel Candelaria, Steven Michels, and

24   Orlando Wynn (all three of whom previously filed consents to join the Action).

25   F.    "Class Counsel" means Kelly M. Dermody and Jahan C. Sagafi of Lieff, Cabraser,

26   Heimann & Bernstein, LLP, and James M. Finberg and Peter E. Leckman of Altshuler Berzon LLP.

27   G.    "Class Member" is a member of the Class.

28   H.    "Class Notice" means the Notice of (1) Proposed Class Settlement and (2) Final

Settlement Approval Hearing to be sent to Class Members after the Court grants preliminary approval of the Settlement, substantially in the form attached to this Settlement as Exhibit B.

I.    "Compensable Work Week" means a seven-day work week, as defined by Cadence's payroll system, during which a Class Member was employed by Cadence in a Covered Position during a Covered Period.  If a Class Member was employed for only part of a Compensable Work Week, he or she will be credited for purposes of the Settlement with a fraction of the Compensable Work Week, rounded up or down to the nearest two-digit decimal.  For example, if a Class Member was employed for only one work day during a work week, he or she would be credited with 0.14 Compensable Work Weeks, while if a Class Member was employed for two work days during a work week, he or she would be credited with 0.29 Compensable Work Weeks.

J.    "Counsel for Cadence" means M. Kirby C. Wilcox, Jeffrey D. Wohl, and Molly A. Harcos of Paul, Hastings, Janofsky & Walker LLP.

K.    "Court" means the United States District Court for the Northern District of California, San Jose Division.

L.    "Covered Period" means the period (1) from May 30, 2003, to the date the Preliminary Approval Order is entered by the Court, for individuals who worked in a Covered Position in the State of California at any time on or after May 30, 2003; or (2) from May 30, 2004, to the date the Preliminary Approval Order is entered by the Court, for individuals who worked in a Covered Position anywhere in the United States other than the State of California at anytime on or after May 30, 2004.

M.    "Covered Position" means one or more of the following titles in the pay grade level of "T1," "T2," "T3," or "T4" held by an individual working for Cadence in the United States while performing the duties of installing, maintaining, and/or supporting computer hardware and/or software for Cadence's Information Technology infrastructure: Associate Desktop Systems Specialist, Associate Systems Administrator, Associate Systems Engineer, Customer Support Manager, IT Remote Support Specialist, Senior AM Systems Engineer, Senior Business Systems Analyst, Senior Desktop Systems Specialist, Senior IT Remote Support Specialist, Senior Network Engineer, Senior Program Analyst, Senior Staff Program Analyst, Senior Systems Administrator, Senior Systems Engineer, Senior Web Administrator, Senior Web Technologist, Staff Business Systems Analyst, Staff Database Administrator,

1  Staff Desktop Systems Specialist, Staff Information Security Analyst, Staff IT Remote Support
2  Specialist, Staff Network Engineer, Staff Program Analyst, Staff Systems Administrator, Staff Systems
3  Analyst, Staff Systems Engineer, Staff Telecomm Engineer, Systems Administrator, Systems Analyst,
4  Systems Engineer, and Web Technologist.

5      N.    "Election Not to Participate in Settlement" means the form by which a Class Member
6  may elect to exclude himself or herself from the Settlement as evidenced by Exhibit D to this
7  Settlement.

8      O.    "Final" means the last of the following dates, as applicable:

9      1.    The date on which the Final Approval Order has been entered, if no objection to
10           the Settlement was filed.

11     2.    The last date on which a notice of appeal from the Final Approval Order may be
12           filed, and none is filed, if an objection to the Settlement was filed.

13     3.    If a timely appeal from the Final Approval Order is filed, the latter of the
14           following dates:

15         a.    the last date by which a petition for writ of *certiorari* by the United States
16               Supreme Court (the "Supreme Court") seeking review of a decision
17               affirming the Final Approval Order by the United States Court of Appeals
18               for the Ninth Circuit (the "Ninth Circuit") may be filed, and none is filed
19               by that date; or

20         b.    if a petition for a writ of *certiorari* by the Supreme Court, seeking review
21               of the Final Approval Order or of the Ninth Circuit's decision on an
22               appeal from the Final Approval Order is timely filed, the date on which
23               the Supreme Court denies the petition or the Supreme Court affirms the
24               Final Approval Order.

25     P.    "Final Approval Order" means the Court's order granting final approval of the
26  Settlement, which will constitute a "judgment" within the meaning of Rule 58(a), Federal Rules of Civil
27  Procedure, substantially in the form attached to this Settlement as Exhibit G.

28     Q.    "Notice Materials" means the Class Notice, the Claim Form, and the Election Not to

1    Participate in Settlement.

2        R.    "Participating Class Member" means a Class Member who has not completed and timely

3    submitted an Election Not to Participate in Settlement.

4        S.    "Preliminary Approval Order" means the Court's order granting preliminary approval of

5    the Settlement, substantially in the form attached to this Settlement as Exhibit F.

6        T.    "Qualified Settlement Fund" or "QSF" means the qualified settlement fund set up by the

7    Settlement Administrator with the Settlement Payment.

8        U.    "Settlement Administrator" means Settlement Services Inc., the settlement administrator

9    who will perform the duties set forth in the Agreement, subject to approval by the Court.

10        V.    "Settlement Payment" means the payment by Cadence to fund the QSF pursuant to this

11    Settlement of $7,500,000.00, plus an amount equal to the then-current 90-day T-bill rate on that

12    $7,500,000.00 calculated from thirty (30) days after the date the Preliminary Approval Order is entered

13    by the Court until the date the Settlement Payment is transferred by Cadence to the QSF.    The

14    Settlement Payment will be the sole source and maximum payment by Cadence to fund, under this

15    Settlement, the (i) Settlement Shares, (ii) the Class Representative Payment, (iii) the Class Counsel

16    Attorneys' Fees and Costs Payment, (iv) the payment to the California Labor Workforce Development

17    Agency (the "LWDA") pursuant to the California Labor Code Private Attorneys General Act

18    ("PAGA"), Cal. Lab. Code § 2698 *et seq.*, (v) the employer's share of payroll taxes on the Settlement

19    Shares, and (vi) the reasonable fees and expenses of the Settlement Administrator.

20        W.    "Settlement Share" means the Class Member's share of the Net QSF, as calculated

21    pursuant to this Settlement.

22    II.    **RECITALS**

23        A.    On May 30, 2007, Plaintiff commenced the Action on behalf of himself and all other

24    individuals allegedly similarly situated to him (the "Proposed Class") with respect to the claims he

25    asserted.

26        B.    In the Action, Plaintiff alleged that Cadence misclassified Plaintiff and the Proposed

27    Class as exempt under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and California

28    wage-and-hour laws and, on that basis, failed to pay Plaintiff and others for overtime wages, to provide

them with meal periods and rest breaks, and to provide them with correctly itemized wage statements. Plaintiff also alleged that with regard to such matters, Cadence engaged in unfair competition in violation of California Business and Professions Code section 17200 *et seq.*; and that Cadence violated the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001 *et seq.*, by failing to pay benefits as a result of failing to credit Plaintiff and the Proposed Class for their claimed unpaid wages.

C.    On June 20, 2007, Cadence answered the complaint in the Action.  Cadence denied Plaintiff's material allegations; maintained that the Court should not certify the class action and the collective proposed by Plaintiff, that Plaintiff and the Proposed Class were properly classified as exempt under the FLSA and California wage-and-hour law, and that Cadence bore no liability to Plaintiff and the Proposed Class; and raised other defenses.  On December 19, 2007, Cadence amended its answer to raise additional defenses to Plaintiff's ERISA count.

D.    In the course of litigating the Action, the Parties have conducted substantial discovery, including the production of thousands of pages of documents (*e.g.,* Cadence policies, job descriptions, and employee benefit plans) and personnel data, and the taking of depositions of Plaintiff and Cadence managers most knowledgeable about the core practices at issue in the Complaint.  Each Party also retained statistical experts to analyze the personnel data, and each Party's expert prepared a damages analysis.

E.    On January 9, 2008, after good-faith negotiations presided over by Mediator David Rotman of Gregario, Haldemann, Piazza, Rotman, Frank & Feder LLP, during which each Party, represented by his or its respective counsel, recognized the substantial risk of an adverse result in the Action, the Parties agreed to settle the Action and all other matters covered by this Settlement.

F.    Class Counsel have conducted a thorough investigation into the facts of the Action. Based on the foregoing discovery and their own independent investigation and evaluation, Class Counsel are of the opinion that the Settlement is fair, reasonable, and adequate and is in the best interest of the Class in light of all known facts and circumstances, including the risk of significant delay, defenses asserted by Cadence, and potential appellate issues.

G.    It is the mutual desire of the Parties to fully, finally, and forever settle, compromise, and

discharge all disputes and claims raised in or related in any way to the Action.  In order to achieve a full and complete release of the released persons, the Class, including Plaintiff and each Class Member, acknowledges that this Settlement is intended to include and resolve all claims arising from or related to the Action as more fully set forth in section XV of the Settlement.

H.    This Settlement represents a compromise of highly disputed claims.  Nothing in this Settlement is intended or will be construed as an admission by Cadence that Plaintiff's claims in the Action have merit or that it has any liability to Plaintiff or the Class on those claims, or as an admission by Plaintiff that Cadence's defenses in the Action have merit.

III.    **DUTIES OF THE PARTIES TO SEEK PROMPT COURT APPROVAL**

A.    Promptly upon execution of this Settlement, the Parties will jointly move the Court for entry of the Preliminary Approval Order, including the following terms:

    1.    Conditionally certifying the Class as an opt-out class under Rule 23, Federal Rules of Civil Procedure, and provisionally certifying the Action as a national FLSA opt-in collective action under section 16(b) of the FLSA, 29 U.S.C. § 216(b).

    2.    Preliminarily approving the Settlement.

    3.    Scheduling a final approval hearing on the questions of (1) whether the Settlement should be finally approved as fair, reasonable, and adequate as to the Class Members; (2) whether the Court should grant Plaintiff's motion for the Class Representative Payment; and (3) whether the Court should grant Class Counsel's motion for the Class Counsel Attorneys' Fees and Costs Payment.

    4.    Approving as to form and content the Notice Materials and setting deadlines for submission of completed Claim Forms and Elections Not to Participate in Settlement and service and filing of objections to the Settlement.

    5.    Appointing a Settlement Administrator to exercise the duties set forth in this Settlement.

    6.    Directing the Settlement Administrator to mail the Notice Materials by first-class mail to the Class Members.

B.    Any disagreement among Parties concerning the final forms of the Notice Materials, the CAFA Notice, or other documents necessary to implement the Settlement will be referred to the Court for resolution.

## IV.    CERTIFICATION OF THE CLASS FOR PURPOSES OF SETTLEMENT ONLY

A.    For purposes of the Settlement only, the Parties stipulate that the Court may certify the Class as an opt-out class under Rule 23, Federal Rules of Civil Procedure (the "Class Stipulation"). More specifically, the Parties agree as part of the Class Stipulation that for settlement purposes only:

1.    The Class is ascertainable.

2.    The Class Members are so numerous as to make it impracticable to join all Class Members as named plaintiffs in this Action.

3.    There are common questions of law and fact including, but not limited to, the following:

> a.    whether Cadence properly classified all Class Members as exempt under California wage-and-hour laws;
>
> b.    whether, in its treatment of the Class as exempt, Cadence violated the California Labor Code;
>
> c.    whether, in its treatment of the Class as exempt, Cadence violated California Business and Professions Code section 17200 *et seq*.;
>
> d.    whether, in its treatment of the Class as exempt, Cadence violated ERISA.

4.    Plaintiff's claims are typical of the claims of the Class Members with respect to their alleged exempt misclassification during the Covered Periods.

5.    Plaintiff and Class Counsel will fairly and adequately protect the interests of the Class.

6.    Questions of law and fact common to the Class Members predominate over any questions affecting any individual member in the Class and a class action is superior to other available means for the fair and efficient adjudication of the controversy.

B.    For purposes of settlement, the Parties also stipulate that with respect to the claim that they were misclassified as exempt under the FLSA, all Class Members are similarly situated within the

1   meaning of section 16(b) of the FLSA, 29 U.S.C. § 216(b) (the "FLSA Stipulation").

2   C.     The Class Stipulation and the FLSA Stipulation are made solely for purposes of the

3   Settlement.  The Class Stipulation and the FLSA Stipulation are in no way an admission that class

4   certification is proper under the more stringent litigation certification standard that requires a showing

5   of, *inter alia*, manageability, and neither this Settlement, the Class Stipulation, nor the FLSA Stipulation

6   will be admissible in this or any other action or proceeding as evidence that (i) the Proposed Class or

7   any other class should be certified; (ii) this action or any other action should be certified as a collective

8   action; or (iii) Cadence is liable to Plaintiff, the proposed Class, or any other class.

9   D.     If, for any reason, the Court does not grant final approval of the Settlement without

10  material modification, or if the Court's final approval of the Settlement is reversed or materially

11  modified on appellate review, then this Settlement, the Class Stipulation, and the FLSA Stipulation will

12  automatically become null and void; the fact that the Parties had made the Class Stipulation and the

13  FLSA Stipulation, or that the Court granted certification of the Class, certification of the collective

14  action, or otherwise accepted either stipulation, will be inadmissible evidence in any subsequent

15  proceeding in the Action or elsewhere.  An award of a Class Representative Payment or a Class

16  Counsel's Attorneys' Fees and Costs Payment in an amount less than that sought by Plaintiff or Class

17  Counsel will not constitute a failure to grant final approval of the Settlement or a material modification

18  of the Settlement.

19  V.     **APPOINTMENT AND DUTIES OF SETTLEMENT ADMINISTRATOR**

20  A.     Subject to the approval of the Court, the Parties have agreed to the appointment of a

21  Settlement Administrator to perform the following duties in connection with administration of the

22  Settlement: (i) using the data provided by Cadence to prepare the Claim Forms with the number of

23  Compensable Work Weeks worked in the Covered Position by each Class Member; (ii) obtaining

24  forwarding addresses for Class Members using appropriate methods, as described in section VII.A. of

25  this Settlement; (iii) mailing the Notice Materials to Class Members; (iv) tracking non-delivered Class

26  Materials and taking reasonable steps to re-send them to Class Members' current addresses; (v) tracking

27  and timely reporting to Class Counsel and Counsel for Cadence returned Claim Forms and Elections Not

28  to Participate in Settlement; (vi) calculating the amounts due to each Class Member pursuant to the

1  Settlement; (vii) resolving disputes (if any) by Class Members regarding the number of Compensable

2  Work Weeks or other matters, and  notifying Class Counsel and Counsel for Cadence of such disputes

3  and their resolution; (viii) establishing the Qualified Settlement Fund ("QSF"); (ix) disbursing all

4  amounts payable from the QSF; (x) notifying Class Counsel and Counsel for Cadence of any Claimants

5  who have not cashed their Settlement Share checks; and (xi) contacting all Claimants who have not

6  cashed their Settlement Share checks to remind them to do so before the six-month deadline for doing so

7  expires.

8        B.    Cadence will provide the Settlement Administrator with reasonable access to its records

9  in order to perform the Settlement Administrator's duties.

10        C.    All disputes relating to the Settlement Administrator's performance of its duties will be

11  referred to the Court, if necessary, which will have continuing jurisdiction over this Settlement until all

12  payments and obligations contemplated by this Settlement have been fully carried out.

13  **VI.   CAFA NOTICE**

14        Pursuant to CAFA, within ten (10) days after the Parties file their joint motion for preliminary

15  approval of the Settlement, Cadence will mail the CAFA Notice to the Attorney General of the United

16  States and the appropriate state official in each state in which a Class Member resides at the time of

17  notice.  If Cadence later learns that a Class Member resides in a state other than the state noted in

18  Cadence's records, Cadence will provide or supplement the CAFA Notice to the appropriate state

19  official in each state where a Class Member is then found to reside.  The Parties intend and believe that

20  the CAFA Notice pursuant to the procedures described in this section comply with the requirements of

21  CAFA; will seek approval of these procedures for CAFA Notice in their motion for preliminary

22  approval of the Settlement; and will request the Court to adjudicate the validity of the CAFA Notice in

23  the motion for final approval of the Settlement and bar any Class Member's claim to void or avoid the

24  Settlement under CAFA.

25  **VII.   NOTICE TO THE CLASS OF THE SETTLEMENT AND THE CLAIM PROCESS**

26        **A.    Mailing the Notice Materials to the Class**

27        1.    Within ten (10) days after the Court enters its Preliminary Approval Order,

28  Cadence will provide to the Settlement Administrator a database that lists, for each Class Member, the

1  Class Member's name, Social Security number, last known address, dates and state(s) of employment,

2  and the number of Compensable Work Weeks in a Covered Position during a Covered Period.  This

3  database will be drawn from Cadence's payroll and other business records and in a format acceptable to

4  the Settlement Administrator.  Cadence will consult with the Settlement Administrator prior to the date

5  for providing this information to ensure that the format will be acceptable to the Settlement

6  Administrator.  Cadence also will provide Class Counsel with a list of each Class Members' name,

7  Cadence employee identification number, and dates and state (s) of employment in a Covered Position

8  during a Covered Period.  The data provided to the Settlement Administrator and Class Counsel will

9  remain confidential and will not be disclosed to anyone, except as required to applicable tax authorities,

10  pursuant to Cadence's express written consent, or by order of the Court.

11       2.     Within fourteen (14) days after Cadence provides to the Settlement Administrator

12  the database pursuant to section VII.A., the Settlement Administrator will mail, by first-class mail, the

13  Notice Materials to all Class Members at their last known address, unless modified by any updated

14  address information that the Settlement Administrator obtains in the course of administration of the

15  Settlement.

16       3.     The Settlement Administrator will use standard devices, including the National

17  Change of Address database or equivalent, to obtain forwarding addresses prior to mailing and will use

18  appropriate skip tracing to take appropriate steps to maximize the probability that the Notice Materials

19  will be received by all Class Members.

20    **B.**     **Claim Form**

21       1.     The Claim Form mailed to the Class Members will show for the recipient Class

22  Member the dates and state(s) of employment in a Covered Position during a Covered Period and the

23  number of Compensable Work Weeks.

24       2.     Class Members will have the opportunity to challenge the information pre-printed

25  on their individualized Claim Forms, including the dates and state(s) of employment and the number of

26  their Compensable Work Weeks by submitting a written challenge along with their signed Claim Form

27  and supporting documentation to the Settlement Administrator within the time period provided for

28  submitting the Claim Form.  Any challenges to the information pre-printed on the Claim Form must be

supported by documentary evidence; the Settlement Administrator will reject any challenge not supported by such evidence.

3.    Timely challenges submitted with documentary evidence will be resolved without hearing by the Settlement Administrator after consultation with Class Counsel and Counsel for Cadence. Cadence's records will be presumed correct, but the Settlement Administrator will evaluate the evidence submitted by the Class Member and will make a final determination based on its evaluation of all the evidence presented.

4.    The Class Members will have sixty (60) days after the date on which the Settlement Administrator mails the Notice Materials to complete and submit to the Settlement Administrator the Claim Form. A completed Claim Form will be deemed timely submitted to the Settlement Administrator if it is (i) mailed to the Settlement Administrator by first-class mail and postmarked by not later than the deadline for submission stated in above; or (ii) it is delivered to the Settlement Administrator by the deadline for submission stated above, whether by mail, facsimile transmission, professional delivery, or personal delivery.

5.    In the event that a Claim Form is submitted timely but is deficient in one or more respects, the Settlement Administrator will return the Claim Form to the Class Member within five (5) business days of receipt with a notice explaining the deficiencies and stating that the Class Member will have ten (10) business days from the date of the deficiency notice to correct the deficiency and resubmit the Claim Form.  The envelope containing the resubmitted Claim Form must be postmarked within ten (10) days of the date of the deficiency notice to be considered timely, absent a showing of good cause. If necessary, the Class Member will be sent a second deficiency notice to correct any deficiency concerning a resubmitted Claim Form, which will be governed by the same timeliness requirements as the first deficiency notice.

6.    It is the Parties' intention that Class Members be reasonably assured that their interest in maintaining the privacy of their participation in the Settlement be respected as much as possible, without compromising the Parties' ability to execute and implement the Settlement in good faith, abide by all legal requirements, and protect Cadence's need to conduct its business efficiently and in the manner of its choosing.  Therefore, information regarding which Class Members submit Claim Forms and which

1  Class Members do not submit Claim Forms will be shared within Cadence on a need-to-know basis, to
2  the extent feasible and consistent with the Settlement.   Specifically, the dissemination of such
3  information will be limited, to the extent feasible, to Cadence's outside counsel, Cadence's in-house
4  counsel, Cadence's Human Resources Department.  Cadence will have no policy of disseminating such
5  information to managers within Class Members' chain of command.  These limitations will not prevent
6  Cadence from sharing any information with any Cadence employee if the sharing of such information is
7  necessary to accomplish legitimate business goals or the fulfillment of the aims of this Settlement.  They
8  also will not prevent the filing of redacted Claims Forms as provided by section VII.F.4. of this
9  Settlement.

10         C.    **Objection to Settlement**

11         1.    The Class Members will have forty-five (45) days after the date on which the
12  Settlement Administrator mails the Notice Materials to object to the Settlement by serving on the
13  Settlement Administrator, Class Counsel, and Counsel for Cadence, and filing with the Court, by the
14  forty-five (45) day deadline, a written objection to the Settlement.

15         2.    A Class Member who does not file and serve a written objection in the manner
16  and by the deadline specified above will be deemed to have waived any objection and will be foreclosed
17  from  making any objections to the Settlement (whether by appeal or otherwise).

18         D.    **Election Not to Participate in Settlement**

19         1.    The Class Members will have forty-five (45) days after the date on which the
20  Settlement Administrator mails the Notice Materials to complete and submit to the Settlement
21  Administrator the Election Not to Participate in Settlement.  A completed Election Not to Participate in
22  Settlement will be deemed timely submitted to the Settlement Administrator if it is (i) mailed to the
23  Settlement Administrator by first-class mail and postmarked by not later than the deadline for
24  submission stated in above; or (ii) it is delivered to the Settlement Administrator by the deadline for
25  submission stated above, whether by mail, facsimile transmission, professional delivery, or personal
26  delivery.

27         2.    A Class Member who does not properly complete and timely submit an Election
28  Not to Participate in Settlement in the manner and by the deadline specified above will automatically

become a Participating Class Member and be bound by all terms and conditions of the Settlement, including its release of claims, if the Settlement is approved by the Court, and be bound by the Final Approval Order, regardless of whether he or she has objected to the Settlement or submitted a completed Claim Form.

3.      A Class Member who properly completes and timely submits an Election Not to Participate in Settlement will not be bound by the Settlement, and Cadence will remain free to contest any claim brought by the Class Member that would have been barred by the Settlement, and nothing in this Settlement will constitute or be construed as a waiver of any defense Cadence has or could assert against such a claim, including a demand that such a claim be arbitrated.

E.      **Reminder of Deadline; Untimely Submissions**

1.      Twenty-five (25) days after the Settlement Administrator mails the Notice Materials to the Class Members, the Settlement Administrator will mail a reminder card to all Class Members who have not submitted a completed Claim Form, an objection to the Settlement, or a completed Election Not to Participate in Settlement indicating the applicable deadline for submission of those papers.

2.      No Claim Form or Election Not to Participate in Settlement will be honored if submitted late, unless the Class Member shows good cause as determined by the Settlement Administrator.

F.      **Reports and Declaration by Settlement Administrator**

1.      By not later than ten (10) days after expiration of the 45-day deadline for submission of the Elections Not to Participate in Settlement, the Settlement Administrator will submit to Class Counsel and Counsel for Cadence a report setting forth the Class Members (identified by Cadence employee identification numbers) who as of that date have submitted (i) valid Elections Not to Participate in Settlement, and (ii) invalid Elections Not to Participate in Settlement (the "Opt-Out Report").  In the event that the Settlement Administrator accepts any Election Not to Participate in Settlement after the expiration of the 45-day deadline, it will promptly update and distribute an updated Opt-Out Report.

2.      By not later than ten (10) days after expiration of the 60-day deadline for

submission of Claim Forms, the Settlement Administrator will submit to Class Counsel and Counsel for Cadence a report setting forth the Class Members (identified by Cadence employee identification numbers) who as of that date have submitted (i) valid Claim Forms and (ii) invalid Claim Forms.

3.   By not later than the date when the Parties file their joint motion for final approval of the Settlement, the Settlement Administrator will prepare and submit for filing in support of the motion a declaration attesting to its mailing of the Notice Materials and (indicated by number of Class Members only) its receipt of valid Claim Forms and valid Elections Not to Participate in Settlement and its inability to deliver the Notice Materials to Class Members due to invalid addresses. Prior to the hearing on the motion for final approval of the settlement, the Settlement Administrator will prepare and submit for filing in support of the motion a supplemental declaration as applicable.

4.   Also by not later than the date when the Parties file their joint motion for final approval of the Settlement, the Settlement Administrator will file with the Court true copies of the valid Claims Forms and Elections Not to Participate it has received, except it will first redact from the documents the Class Member's address, telephone number, and e-mail address, the last four digits of his or her Social Security number, and his or her Compensable Work Weeks and estimated Settlement Share.

VIII.   **RIGHT TO RESCIND**

In the event that by number more than five percent (5%) of the Class Members, or a number of Class Members whose share of the Net QSF would represent five percent (5%) or more of the total if they all were Claimants, submit valid Elections Not to Participate in Settlement, Cadence will have the right to rescind the Settlement and the Settlement and all actions taken in its furtherance will be null and void. Cadence must exercise this right within ten (10) days after the Settlement Administrator sends to Class Counsel and Counsel for Cadence the Opt-Out Report, provided no untimely Election Not to Participate is accepted by the Settlement Administrator pursuant to section VIII.E.2., or within five (5) days of the date that any untimely Election Not to Participate that is accepted by the Settlement Administrator pursuant to section VIII.E.2 is reported to Cadence.

IX.   **FINAL APPROVAL OF THE SETTLEMENT**

A.   The Parties will jointly move the Court for final approval of the Settlement.

B.      At the same time of the joint motion for final approval, Plaintiff and Class Counsel may separately move to the Court for an award of a Class Representative Payment from the QSF in an amount not to exceed $15,000 for his services as the class representative in addition to his Settlement Share, and for an award of a Class Counsel Attorneys' Fees and Costs Payment from the QSF in an amount not to exceed 25% of the principal of the Settlement Payment (or $1,875,000) for attorneys' fees and an amount not to exceed $50,000 for costs and expenses.  Cadence will not oppose the motion for a Class Representative Payment and a Class Counsel Attorneys' Fees and Costs Payment in these amounts, but will not be required to support the motion.

C.      In the event that an opposition to final approval of the Settlement is filed, the Parties will cooperate in submitting a reply in support of final approval, except that if an opposition is directed to the motion for a Class Representative Payment or a Class Counsel Attorneys' Fees and Costs Payment, then it will be the sole responsibility of Plaintiff and Class Counsel to submit a reply in that regard.

D.      If the motion for final approval is granted, the Parties will submit the proposed Final Approval Order for entry by the Court.

X.      **WAIVER OF RIGHT TO APPEAL**

Provided that the Final Approval Order is consistent with the terms and conditions of this Settlement, Plaintiff, Participating Class Members who did not timely submit an objection to the Settlement, Class Counsel, and Cadence hereby waive any and all rights to appeal from the Final Approval Order, including all rights to any post-judgment proceeding and appellate proceeding, such as a motion to vacate or set-aside judgment, a motion for new trial, and any extraordinary writ, and the Final Approval Order therefore will become final and nonappealable at the time it is entered.  The waiver does not include any waiver of the right to oppose any appeal, appellate proceedings, or post-judgment proceedings.  The waiver does not apply to appeals addressing (i) the Court's material modification of the Settlement, or (ii) reduction of the amount to be awarded as the Class Representative Payment or Class Counsel's Attorneys' Fees and Costs Payment.

XI.     **REVERSAL OR MATERIAL MODIFICATION OF JUDGMENT ON APPEAL**

If, after a notice of appeal or a petition for writ of *certiorari*, or any other motion, petition, or application, the reviewing court vacates, reverses, or modifies the Final Approval Order such that there

1    is a material modification to the Settlement, and that court's decision is not completely reversed and the

2    Final Approval Order is not fully affirmed on review by a higher court, then either Plaintiff or Cadence

3    will have the right to void the Settlement, which the Party must do by giving written notice to the other

4    Parties, the reviewing court, and the Court not later than fourteen (14) days after the reviewing court's

5    decision vacating, reversing, or materially modifying the Final Approval Order becomes Final.    A

6    vacation, reversal, or modification of the Court's award of the Class Representative Payment or the

7    Class Counsel Attorneys' Fees and Costs Payment will not constitute a vacation, reversal, or material

8    modification of the Final Approval Order within the meaning of this paragraph, provided that Cadence's

9    obligation to make payments under this Settlement remains limited by the Settlement Payment.

10   **XII.    CREATION OF THE QUALIFIED SETTLEMENT FUND**

11   A.      At the request of the Settlement Administrator made after the issuance of the Final

12   Approval Order, Cadence will cause to be wired to the Qualified Settlement Fund (QSF) the Settlement

13   Payment.  The Settlement Payment is the maximum amount that Cadence is obligated to pay under this

14   Settlement and is inclusive of the Class Representative Payment made to Plaintiff, the Class Counsel

15   Attorneys' Fees and Costs Payment made to Class Counsel, the payment made to the LWDA, the Class

16   Members' Settlement Shares, the employer's share of payroll taxes applicable to the Settlement Shares,

17   and the Settlement Administrator's reasonable fees and expenses in administering the Settlement.  In no

18   event will Cadence be obligated to pay any additional amount to the QSF.

19   B.      While held in the QSF, the funds in the QSF will accrue interest at the then-current T-bill

20   rate.  There will be no reversion to Cadence of any portion of the QSF provided that the Final Approval

21   Order becomes Final.

22   C.      If the Settlement is not granted final approval by the Court, or if the Final Approval

23   Order does not become Final, then all proceeds of the QSF (other than those used to pay the Settlement

24   Administrator's reasonable fees and expenses in administering the Settlement to that point), including all

25   accrued interest, will be immediately returned to Cadence.

26   **XIII.    DISTRIBUTION OF THE QUALIFIED SETTLEMENT FUND**

27   A.      After the Final Approval Order becomes Final, the Settlement Administrator will

28   distribute the proceeds of the QSF as follows:

1. Within ten (10) days after the Final Approval Order becomes Final, the Settlement Administrator will make the following payments from the QSF:

  a. To every Claimant, his or her Settlement Share.

  b. To Plaintiff, the Class Representative Payment as awarded by the Court, for which the Settlement Administrator will issue a Form 1099 to Plaintiff.

  c. To Class Counsel, the Class Counsel Attorneys' Fees and Costs Payment as awarded by the Court, for which the Settlement Administrator will issue a Form 1099 to Class Counsel.

  d. To the LWDA, as approved by the Court, $20,000.00 in settlement of the claim in the Action for statutory penalties recoverable under PAGA.

2. Each Claimant's Settlement Share will be calculated as follows:

  a. The "Net QSF" will equal the proceeds of the QSF at the time of distribution less (i) the Class Representative Payment, (ii) the Class Counsel Attorneys' Fees and Costs Payment, (iii) the payment to the LWDA, (iv) the employer's share of payroll taxes applicable to the wage portion of the Settlement Shares, (v) the Settlement Administrator's reasonable fees and expenses, and (vi) if applicable as set forth in section XIII.C., the Remainder donated to charitable concerns.

  b. A Claimant's Settlement Share will be the product of the Net QSF times the percentage (rounded up or down to the nearest five-digit decimal) of (i) that Claimant's number of Compensable Work Weeks within the Covered Period applicable to that Claimant compared to (ii) the total of all Claimants' Compensable Work Weeks within the Covered Periods applicable to them; provided, however, that in consideration of the more favorable remedies provided by California wage-and-hour laws compared to the FLSA with respect to exempt misclassification, for purposes of calculating a Claimant's Settlement Share with respect to both that Claimant and the aggregate totals for all Claimants, each Compensable

Work Week or fraction of a Compensable Work Week in which a Claimant was employed by Cadence in a Covered Position during a Covered Period in the State of California will be multiplied by 2.7 and rounded up to the nearest single-digit decimal.

3.  Because the Settlement Shares include sums in settlement of claims for wages, interest, and penalties, fifty percent (50%) of each Settlement Share is intended to constitute a settlement of a claim for unpaid wages, for which the Settlement Administrator will issue a Form W-2 to the Claimant, payroll tax withholding and deductions will be taken, and the employer's share of payroll taxes on that portion will be paid from the QSF; and the remaining fifty percent (50%) of each Settlement Share is intended to constitute a settlement of claims for interest and penalties, for which no payroll tax withholding and deductions will be taken and the Settlement Administrator will issue a Form 1099 to the Claimant.

B.  By not later than ninety (90) days after the Settlement Administrator mails the checks to the Claimants for their Settlement Shares, the Settlement Administrator will (i) notify Class Counsel of any Claimants who have not cashed their Settlement Share checks and (ii) contact either by telephone or letter each Claimant who has not cashed his or her Settlement Share checks and remind him or her to do so before the six-month deadline.  The Settlement Administrator will inform these Claimants that if they fail to cash their Settlement Share checks by the six-month deadline, they will not receive any money under the Settlement, and their Settlement Share proceeds represented by the check will be re-distributed among the Claimants who have cashed their checks.  By not later than one hundred and fifty (150) days after the Settlement Administrator mails the checks to every Claimant for his or her Settlement Share, the Settlement Administrator will again contact those Claimants who have not cashed their checks with the same reminder and information.

C.  If any Claimant who submitted a timely and valid Claim Form does not cash the check(s) for his or her Settlement Share within six (6) months after issuance, the proceeds represented by the check (the "Remainder") will be distributed as follows:

1.  If the Remainder exceeds $10,000, it will be distributed to all Claimants who cashed their Settlement Share checks proportionately to their respective Settlement Shares.

2.    If the Remainder does not exceed $10,000, it will be donated in the name of the "*Higazi v. Cadence Design Systems, Inc.*" Settlement Fund as follows: 25 percent (25%) to the Legal Aid Society of San Francisco/Employment Law Center, 25 percent (25%) to the Bar Association of San Francisco Volunteer Legal Services Project, and fifty percent (50%) to The Leukemia & Lymphoma Society.

D.    It is the intention of the Parties and by this Settlement the effect that unless the Claimants cash their Settlement Share checks within the six-month period provided for doing so, they do not hold any property right to or interest in the funds represented by the checks, and therefore California's Unclaimed Property Law, Cal. Code Civ. Proc. § 1500 *et seq.*, and any other comparable laws in the other jurisdictions encompassed by this Settlement, do not apply to checks not cashed within the six-month period and the funds represented by those checks will not escheat to the applicable jurisdiction.

## XIV.    NO EFFECT ON OTHER BENEFITS

The Settlement Shares will not result in any additional benefit payments (such as 401(k) or bonus) beyond those provided by this Settlement to Plaintiff or Claimants, and the Participating Class Members will be deemed to have waived all such claims, whether known or unknown by them, as part of their release of claims under this Agreement.

## XV.    RELEASE OF CLAIMS BY PLAINTIFF, PARTICIPATING CLASS MEMBERS, AND CLASS COUNSEL

A.    **Plaintiff's Release of Claims**: In consideration of his awarded Class Representative Payment, his Settlement Share, and the other terms and conditions of the Settlement, as of the date the Final Approval Order is entered by the Court, Plaintiff, on behalf of himself and his heirs and assigns, hereby releases Cadence and its former and current parents, subsidiaries, and affiliates, officers, directors, employees, partners, shareholders, agents, insurers, successors, assigns, and legal representatives (the "Cadence Parties"), from any and all claims, causes of action, demands, rights, and liabilities of every nature and description arising on or before the date the Final Approval Order is entered by the Court ("Plaintiff's Released Claims").  Plaintiff's Released Claims include, but are not limited to, those claims raised in the Action; any other claims arising under the FLSA, the California Labor Code, California Business and Professions Code section 17200 *et seq.*, ERISA, and other

applicable law based on the allegation that Plaintiff was misclassified as exempt; any other claims for lost wages and benefits, interest, and penalties, including penalties under PAGA; claims for emotional distress, punitive damages, and attorneys' fees and expenses arising under federal, state, or local laws for discrimination, harassment, and wrongful termination, such as, by way of example only, the Civil Rights Act of 1866, as amended, 42 U.S.C. section 1981, Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. section 2000e *et seq.*, the Americans with Disabilities Act, 42 U.S.C. section 12101 *et seq.*, and the California Fair Employment and Housing Act, Cal. Gov't Code § 12900 *et seq.*; and claims arising under the law of contract and tort.

B.    **Participating Class Members' Release of Claims:** In consideration of his or her eligibility for an Settlement Share, as of the date the Final Approval Order is entered by the Court, each and every Participating Class Member hereby releases the Cadence Parties from the following claims, causes of action, demands, rights, and liabilities of every nature and description, whether known or unknown ("Claims") that arise from any act or omission occurring on or before the Final Approval Order is entered by the Court that was taken on the basis that the Participating Class Member was misclassified as exempt under federal or state law while employed in a Covered Position during a Covered Period, including but not limited to (i) the alleged failure to pay any type of overtime wages, (ii) the alleged failure to provide meal periods and rest breaks, (iii) the alleged failure to provide itemized wage statements, or (iv) the alleged failure to provide benefits:

      1.    any and all applicable federal wage-and-hour Claims, including, without limitation, claims arising under the FLSA;

      2.    any and all wage-and-hour Claims arising under the laws of the State of California and the laws of all other States, including, without limitation, statutory, constitutional, contractual or common law claims for wages, damages, unpaid costs, penalties (including penalties under PAGA), liquidated damages, punitive damages, interest, attorney fees, litigation costs, restitution, or equitable relief;

      3.    any and all Claims for unfair business practices or unfair competition, including, without limitation, claims arising under California Government Code section 17200 *et seq.*; and

1
2

4.      any and all Claims for benefits, including without limitation claims arising under

ERISA.

3    These released Claims are called the "Participating Class Members' Released Claims."

4    C.    **Class Counsel's Released Claims.**  In consideration of the Class Counsel Attorneys'
5    Fees and Costs Payment, as of the date the Final Approval Order is entered by the Court, and except as
6    otherwise provided by this Agreement, Class Counsel hereby releases any claims, causes of action,
7    demands, rights, and liabilities of every nature and description for attorneys' fees, costs, and expenses
8    against the Cadence Parties arising from or related to the Action, including but not limited claims based
9    on the FLSA, the California Labor Code, or any other statute or law (the "Class Counsel's Released
10   Claims").

11   D.    **Waiver of California Civil Code Section 1542.**  Plaintiff's Released Claims,
12   Participating Class Members' Released Claims, and Class Counsel's Released Claims include all such
13   claims, whether known or unknown by the releasing party.  Thus, even if Plaintiff, a Class Member, or
14   Class Counsel discover facts in addition to or different from those that they now know or believe to be
15   true with respect to the subject matter of their respective released claims, those claims will remain
16   released and forever barred.  Therefore, Plaintiff, Class Members, and Class Counsel expressly waive
17   and relinquish the provisions, rights and benefits of section 1542 of the California Civil Code and any
18   analogous law, statute, or rule.  Section 1542 states:

19
20

A general release does not extend to claims which the creditor does not know or suspect
to exist in his or her favor at the time of executing the release, which if known by him or
her must have materially affected his or her settlement with the debtor.

21   XVI.   **CONFIDENTIALITY PRECEDING PRELIMINARY APPROVAL**

22          The Parties and their counsel will not issue any press or other media releases or have any
23   communication with the press or media or anyone else (other than co-counsel, experts, potential claims
24   administrators, and/or as necessary for audits or filings with the Securities and Exchange Commissions)
25   regarding the Settlement prior to the filing for preliminary court approval of the Settlement.  If Plaintiff
26   or his attorneys disclose to any non-party that (i) a settlement has been reached or (ii) any of the terms of
27   the Settlement before filing for preliminarily approval, Cadence may rescind the Settlement, rendering it
28   null and void, and will no longer be bound by any of its terms.

1    XVII.    **USE AND RETURN OF DOCUMENTS**

2        All originals, copies, and summaries of documents provided to Class Counsel by Cadence in

3    connection with the mediation or other settlement negotiations in this matter may be used only with

4    respect to this Settlement, and no other purpose, and may not be used in any way that violates any

5    existing contractual agreement, statute, or rule.  Within thirty (30) days after the Final Approval Order

6    becomes Final, Class Counsel will return or destroy and confirm in writing to Cadence the destruction of

7    all such documents.

8    XVIII.  **MUTUAL FULL COOPERATION**

9        The Parties will fully cooperate with each other and use their best efforts, including all efforts

10   contemplated by this Settlement and any other efforts that may become necessary or ordered by the

11   Court, or otherwise,  to accomplish the terms of this Settlement, including but not limited to, executing

12   of such documents and taking such other action as may reasonably be necessary to obtain preliminary

13   and final approval of this Settlement and to implement its terms.

14   XIX.    **NO PRIOR ASSIGNMENTS**

15       The Parties represent, covenant, and warrant that they have not directly or indirectly, assigned,

16   transferred, encumbered, or purported to assign, transfer, or encumber to any person or entity any

17   portion of any claims, causes of action, demands, rights, and liabilities of every nature and description

18   released under this Settlement.

19   XX.    **NOTICES**

20       Unless otherwise specifically provided by this Settlement, all notices, demands or other

21   communications given under this Settlement will be in writing and be deemed to have been duly given

22   as of the third business day after mailing by United States registered or certified mail, return-receipt

23   requested, addressed as follows:

24                        **To Plaintiff and the Class:**

25                        KELLY M. DERMODY
                         JAHAN C. SAGAFI
26             LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
                        275 Battery Street, 30th Floor
27                   San Francisco, California  94111-3339

28

JAMES M. FINBERG
PETER E. LECKMAN
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, California  94108

**To Cadence:**

M. KIRBY C. WILCOX
JEFFREY D. WOHL
MOLLY A. HARCOS
PAUL, HASTINGS, JANOFSKY & WALKER LLP
55 Second Street, 24th Floor
San Francisco, California  94105

XXI.  **CONSTRUCTION**

This Settlement is the result of lengthy, arms-length negotiations between the Parties.  This Settlement will not be construed in favor of or against any Party by reason of the extent to which any Party or his or its counsel participated in the drafting of this Settlement.

XXII.  **CAPTIONS AND INTERPRETATIONS**

Paragraph titles, headings, or captions contained in this Settlement are inserted as a matter of convenience and for reference, and in no way define, limit, extend, or describe the scope of this Settlement or any of its provisions.  Each term of this Settlement is contractual and not merely a recital, except for those denominated as recitals in section II.

XXIII. **MODIFICATION**

This Settlement may not be changed, altered, or modified, except in writing and signed by the Parties and approved by the Court.  This Settlement may not be discharged except by performance in accordance with its terms or by a writing signed by the Parties.

XXIV. **APPLICABLE LAW**

All terms and conditions of this Agreement and its exhibits will be governed by and interpreted according to the laws of the State of California, without giving effect to any conflict of law or choice of law principles.

XXV.  **INTEGRATION CLAUSE**

This Settlement and its exhibits constitute the entire agreement between the Parties relating to the Settlement and transactions contemplated by the Settlement.  All prior or contemporaneous agreements,

1  understandings, representations, and statements, whether oral or written and whether by a Party or a

2  Party's counsel, are merged into this Settlement.  No rights under this Settlement may be waived except

3  in writing.

4  XXVI. **BINDING ON ASSIGNS**

5      This Settlement will be binding upon and will inure to the benefit of the Parties and their

6  respective heirs, trustees, executors, administrators, successors and assigns.

7  XXVII.      **COUNTERPARTS**

8      This Settlement may be executed in counterparts, and when each Party has signed and delivered

9  at least one such counterpart, each counterpart will be deemed an original, and, when taken together

10  with other signed counterparts, will constitute one Settlement, which will be binding upon and effective

11  as to all Parties, subject to court approval.

12  XXVIII.    **PARTICIPATING CLASS MEMBERS BOUND BY SETTLEMENT**

13      Because the Class Members are so numerous, it is impossible or impractical to have each

14  Participating Class Member execute this Settlement.  The Class Notice will inform all Class Members of

15  the binding nature of the release of Class Members' Released Claims and it will have the same force and

16  effect as if this Settlement were executed by each Participating Class Member.

17  XXIX.    **PARTIES' AUTHORITY TO SIGN**

18      The signatories to this Settlement hereby represent that they are fully authorized to enter into this

19  Settlement on behalf of themselves or their respective principals.

20      **EXECUTION BY PARTIES AND COUNSEL**

21      The Parties and their counsel hereby execute this document to evidence their acceptance of and

22  agreement to the Settlement.

23      Dated:  February ___, 2008.        AHMED HIGAZI

24

25      _____

26

27

28

1  Settlement and transactions contemplated by the Settlement. All prior or contemporaneous agreements,

2  understandings, representations, and statements, whether oral or written and whether by a Party or a

3  Party's counsel, are merged into this Settlement. No rights under this Settlement may be waived except

4  in writing.

5  **XXVI. BINDING ON ASSIGNS**

6  This Settlement will be binding upon and will inure to the benefit of the Parties and their

7  respective heirs, trustees, executors, administrators, successors and assigns.

8  **XXVII.    COUNTERPARTS**

9  This Settlement may be executed in counterparts, and when each Party has signed and delivered

10  at least one such counterpart, each counterpart will be deemed an original, and, when taken together

11  with other signed counterparts, will constitute one Settlement, which will be binding upon and effective

12  as to all Parties, subject to court approval.

13  **XXVIII.   PARTICIPATING CLASS MEMBERS BOUND BY SETTLEMENT**

14  Because the Class Members are so numerous, it is impossible or impractical to have each

15  Participating Class Member execute this Settlement. The Class Notice will inform all Class Members of

16  the binding nature of the release of Class Members' Released Claims and it will have the same force and

17  effect as if this Settlement were executed by each Participating Class Member.

18  **XXIX.    PARTIES' AUTHORITY TO SIGN**

19  The signatories to this Settlement hereby represent that they are fully authorized to enter into this

20  Settlement on behalf of themselves or their respective principals.

21  **EXECUTION BY PARTIES AND COUNSEL**

22  The Parties and their counsel hereby execute this document to evidence their acceptance of and

23  agreement to the Settlement.

24  Dated: February 27, 2008.    AHMED HIGAZI

25

26

27

28

1

Dated:  February ___, 2008.          KELLY M. DERMODY
2                                     JAHAN C. SAGAFI
                                      LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP

3
                                      By: _____
4                                                  Jahan C. Sagafi
                                            Attorneys for Plaintiff Ahmed Higazi
5

6   Dated:  February ___, 2008.          JAMES M. FINBERG
                                      PETER E. LECKMAN
                                      ALTSHULER BERZON LLP
7

8                                     By: _____
                                                  James M. Finberg
9                                           Attorneys for Plaintiff Ahmed Higazi

10  Dated:  February ___, 2008.          CADENCE DESIGN SYSTEMS, INC.

11
                                      By: _____
12                                                William Porter

13

14  Dated:  February ___, 2008.          M. KIRBY C. WILCOX
                                      JEFFREY D. WOHL
15                                    MOLLY A. HARCOS
                                      PAUL, HASTINGS, JANOFSKY & WALKER LLP
16
                                      By: _____
17                                                Jeffrey D. Wohl
                                            Attorneys for Defendant
18                                          Cadence Design Systems, Inc.

19

20

21

22

23

24

25

26

27

28

1    Dated:  February 27, 2008.           KELLY M. DERMODY
                                          JAHAN C. SAGAFI
2                                         LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP

3
                                          By: _____
4                                                    Jahan C. Sagafi
                                              Attorneys for Plaintiff Ahmed Higazi
5
6    Dated:  February ___, 2008.          JAMES M. FINBERG
                                          PETER E. LECKMAN
7                                         ALTSHULER BERZON LLP

8                                         By: _____
                                                   James M. Finberg
9                                             Attorneys for Plaintiff Ahmed Higazi

10   Dated:  February ___, 2008.          CADENCE DESIGN SYSTEMS, INC.

11
                                          By: _____
12                                                 William Porter

13
14   Dated:  February ___, 2008.          M. KIRBY C. WILCOX
                                          JEFFREY D. WOHL
15                                        MOLLY A. HARCOS
                                          PAUL, HASTINGS, JANOFSKY & WALKER LLP
16
17                                        By: _____
                                                   Jeffrey D. Wohl
18                                            Attorneys for Defendant
                                              Cadence Design Systems, Inc.
19
20
21
22
23
24
25
26
27
28

Dated:  February ___, 2008.

KELLY M. DERMODY
JAHAN C. SAGAFI
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP


By: _____
            Jahan C. Sagafi
     Attorneys for Plaintiff Ahmed Higazi

Dated:  February 27, 2008.

JAMES M. FINBERG
PETER E. LECKMAN
ALTSHULER BERZON LLP

By: _____
            James M. Finberg
     Attorneys for Plaintiff Ahmed Higazi

Dated:  February ___, 2008.

CADENCE DESIGN SYSTEMS, INC.


By: _____
            William Porter

Dated:  February ___, 2008.

M. KIRBY C. WILCOX
JEFFREY D. WOHL
MOLLY A. HARCOS
PAUL, HASTINGS, JANOFSKY & WALKER LLP


By: _____
            Jeffrey D. Wohl
     Attorneys for Defendant
     Cadence Design Systems, Inc.

Dated: February ___, 2008.

KELLY M. DERMODY
JAHAN C. SAGAFI
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP

By: _____
                Jahan C. Sagafi
       Attorneys for Plaintiff Ahmed Higazi

Dated: February ___, 2008.

JAMES M. FINBERG
PETER E. LECKMAN
ALTSHULER BERZON LLP

By: _____
                James M. Finberg
       Attorneys for Plaintiff Ahmed Higazi

Dated: February ___, 2008.

CADENCE DESIGN SYSTEMS, INC.

By: _____
                William Porter

Dated: February ___, 2008.

M. KIRBY C. WILCOX
JEFFREY D. WOHL
MOLLY A. HARCOS
PAUL, HASTINGS, JANOFSKY & WALKER LLP

By: _____
                Jeffrey D. Wohl
              Attorneys for Defendant
           Cadence Design Systems, Inc.

LEGAL_US_W
# 58906632.6

1   Dated:  February ___, 2008.          KELLY M. DERMODY
2                                        JAHAN C. SAGAFI
                                         LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
3
4                                        By: _____
                                                        Jahan C. Sagafi
5                                            Attorneys for Plaintiff Ahmed Higazi

6   Dated:  February ___, 2008.          JAMES M. FINBERG
                                         PETER E. LECKMAN
7                                        ALTSHULER BERZON LLP

8                                        By: _____
                                                        James M. Finberg
9                                            Attorneys for Plaintiff Ahmed Higazi

10  Dated: February ___, 2008.           CADENCE DESIGN SYSTEMS, INC.

11
12                                       By: _____
                                                        William Porter
13
14  Dated: February 27, 2008.            M. KIRBY C. WILCOX
                                         JEFFREY D. WOHL
15                                       MOLLY A. HARCOS
                                         PAUL, HASTINGS, JANOFSKY & WALKER LLP
16
17                                       By: _____
                                                        Jeffrey D. Wohl
18                                           Attorneys for Defendant
                                             Cadence Design Systems, Inc.
19

20

21

22

23

24

25

26

27

28