James M. Finberg (SBN 114850)
Peter E. Leckman (SBN 235721)
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA  94108
Telephone:  (415) 421-7151
Facsimile:   (415) 362-8064
E-Mail: jfinberg@altber.com
E-Mail: pleckman@altber.com

Kelly M. Dermody (SBN 171716)
Jahan C. Sagafi (SBN 224887)
LIEFF, CABRASER, HEIMANN &
   BERNSTEIN, LLP
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339
Telephone:  (415) 956-1000
Facsimile:   (415) 956-1008
E-Mail: kdermody@lchb.com
E-Mail: jsagafi@lchb.com

*Attorneys for Plaintiff and the Proposed Class*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| AHMED HIGAZI, on behalf of himself and a class of those similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CADENCE DESIGN SYSTEMS, INC.,<br><br>Defendant. | Case No.  07-2813 JW<br><br>**DECLARATION OF JAMES M. FINBERG IN SUPPORT OF JOINT MOTION FOR ORDER (1) CONDITIONALLY CERTIFYING SETTLEMENT CLASS AND COLLECTIVE ACTION, (2) GRANTING PRELIMINARY APPROVAL TO PROPOSED CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION, (3) DIRECTING DISSEMINATION OF NOTICE, AND CLAIM FORM TO THE CLASS; AND (4) SETTING DATE FOR FAIRNESS HEARING AND RELATED DATES.**<br><br>Date:     March 10, 2008<br>Time:    10:00 a.m.<br>Crtrm:   8<br>Judge:   Honorable James Ware |

I, James M. Finberg, declare as follows:

1. I am a partner with Altshuler Berzon LLP, one of the firms serving as Plaintiff's counsel herein. I have been one of the lawyers primarily responsible for the prosecution of Plaintiff's claims on behalf of the proposed class. I make these statements based on personal knowledge and would so testify if called as a witness at trial.

2. I am a member in good standing of the bar of the State of California, as well as the U.S. District Courts in California.

3. This Declaration is submitted in support of the joint Notice of Motion and Motion For Order: (1) Conditionally Certifying Settlement Class and Collective Action, (2) Granting Preliminary Approval to Proposed Class Action Settlement and Plan of Allocation, (3) Directing Dissemination of Notice, and Claim Form to the Class; and (4) Setting Date for Fairness Hearing and Related Dates.

4. Attached hereto as Exhibit A is a true and correct copy of Altshuler Berzon LLP's firm resume.

## My Background And Experience

5. I received a Bachelor of Arts degree, with honors in history and environmental studies, from Brown University in 1980. I received a Juris Doctor degree from the University of Chicago Law School in 1983. At the University of Chicago Law School, I was the Executive Editor of the University of Chicago Law Review.

6. From Fall 1983 through Summer 1984, I served as a law clerk to the Honorable Charles L. Levin, a Justice of the Supreme Court of the State of Michigan.

7. Since 2005, I have been listed by Best Lawyers in America as one of the best lawyers in America in the field of law and employment law. In 2006, I was selected by The Daily Journal as one of the Top 100 lawyers in California. I am a fellow of the American College of Labor and Employment Lawyers. Since 2004, I have been designated by San Francisco Magazine as a Northern California "Super Lawyer," including being listed as one of the top 100 attorneys in Northern California since 2005. In 2003, I was selected by The Recorder legal newspaper (based on a survey of judges, arbitrators, mediators, and lawyers in the field) as the top

plaintiff's securities litigator in the San Francisco Bay Area. In 2004, I was selected by <u>The Recorder</u> legal newspaper as one of the top plaintiff's employment litigators in the San Francisco Bay Area. In 2005, I was selected by <u>The Los Angeles Daily Journal</u> as one of the "Top 30 Securities Litigators in California."

8. In 2005, I served as the President of the Bar Association of San Francisco. From 2000-2001, I served as Co-Chair of the delegation of Lawyer Representatives from the Northern District of California to the Ninth Circuit Judicial Conference. From 1997-1998, I served as co-chair of the Lawyers' Committee for Civil Rights of the San Francisco Bay Area.

9. I am a co-author of "Statistical and Other Expert Proof," in <u>Employment Discrimination Law</u> (4th ed., Lindemann and Grossman). I also edited the 2000 and 2002 Cumulative Supplements to Chapter 39, "Statistical Proof," of that treatise (3d ed.). I have been a contributor to *Wage and Hour Laws: A State-by-State Survey* (BNA, 2004) and to *Fair Labor Standards Act: 2004 Cumulative Supplement* (BNA, 2004).

10. I am author or co-author of the following articles, among others: Co-Author with Peder J. Thoreen, "The Use of Representative Testimony and Bifurcation of Liability and Damages in FLSA Collective Actions (ABA 2007); Co-Author with Peter E. Leckman, "Holding Customers Who Assist Securities Fraud Accountable Under State Law," <u>Securities Litigation Report</u> (Vol. 3, No. 5, May 2006); Author, "State Law Wage/Hour Class Actions: Alive And Well In Federal Court," <u>ABA Labor and Employment Section 2005</u>; Co-Author with Melissa Matheny, "A Developing Consensus: The PSLRA's 'Basis' Requirement Does Not Require the Disclosure of Confidential Sources in a Complaint," <u>Securities Litigation Report</u> (Vol. 2, No. 1, July/August 2005) (Glasser Legal Works). Co-Author with Chimène I. Keitner, "New Overtime Regulations Require Heightened Vigilance," <u>San Francisco Attorney Magazine</u>, Spring 2004; Co-Author with Chimène I. Keitner, "Summary of Proposed DOL Regulations Re FLSA Overtime Exemptions" (2003) (American Bar Association – Labor and Employment Law, Federal Labor Standards Legislation Committee Annual Report); Editor, 2000 and 2002 Cumulative Supplements to Chapter 39, "Statistical Proof," <u>Employment Discrimination Law</u> (3d ed., Lindemann and Grossman); "Title VII's Remedial Scheme: Employment Discrimination

Class Actions at the Crossroads," San Francisco Attorney (August/September 2002); "Certification of Employment Discrimination Actions After The Passage of the 1991 Civil Rights Act: (b)(2) or Not (b)(2), That Is The Question," Class Actions & Derivative Suits, Vol. 10 (March 2000); Co-Author with Joshua P. Davis, "*Allison v. Citgo Petroleum Corp*.- A Noble Retreat," Class Actions & Derivative Suits, Vol. 9, No. 1 (Winter 1999); Co-Author with Kelly Dermody, "Discovery in Employment Discrimination Class Actions," in Litigation and Settlement of Complex Class Actions (Glasser Legal Works 1998); Co-Author with Melanie M. Piech, "The Impact of the Private Securities Litigation Reform Act: Unintended Consequences," Securities Reform Act Litigation Reporter, Vol. 6, No. 3 (Dec. 1998); Co-Author with Karen Jo Koonan, "The Importance of Anecdotal Testimony to the Jury Trial of a Title VII Class Action: Lessons from Butler v. Home Depot," Class Actions & Derivative Suits, Vol. 8, No. 3 (Summer 1998); "Northern District of California Requires Internet Posting of Pleadings And Key Briefs In Securities Actions," "Securities Reform Act Litigation Reporter" (1997); "Class Actions: Useful Devices That Promote Judicial Economy And Provide Access to Justice," 41 New York Law School Law Review 353 (1997); Co-Author (with Melvin R. Goldman), "Deposing Expert Witnesses" in Taking Depositions (ABA) (1989); Co-Author (with George C. Weickhardt), "New Push For Chemical Weapons," Bulletin of the Atomic Scientist (Nov. 1986); Comment, "The General Mining Law and The Doctrine of Pedis Possessio: The Case For Congressional Action," 49 University of Chicago Law Review 1027 (1982).

11.  I am also currently teaching a class on employment discrimination law at the University of California Hastings College of Law.

12.  During my approximately 24 years of practice, I have served as an attorney in many complex class actions. I have represented plaintiff classes in class actions on dozens of occasions, and have served as the principal, or lead, attorney representing a plaintiff class in well over a dozen cases, including the following: Butler v. Home Depot, No. C94 4335 SI (settlement of $87.5 million, plus comprehensive injunctive relief, in gender discrimination case in 1998); Rosenburg v. Int'l Bus. Machines Corp., No. CV 06-00430 PJH (N.D. Cal.) ($65 million settlement of wage and hour class and collective action in 2007); Satchell v. Federal Express

- 3 -   DECL. OF FINBERG ISO JOINT MOT. FOR PRELIM. APPROVAL OF SETTLMNT - CASE NO. 07-2813 JW

Corp., C03-2659 SI; C03-2878 SI (N.D. Cal.) (settlement of $55 million, plus comprehensive injunctive relief, of race and national origin discrimination claims in 2007); <u>Frank v. United Airlines</u>, No. C92 0692 MJJ (N.D. Cal.) ($36.5 million gender discrimination settlement in 2004); <u>Giannetto v. CSC Corp.</u>, No. CV 03-8201 (C.D. Cal.) ($24 million settlement of wage/hour case in 2005); <u>Gerlach v. Wells Fargo & Co.</u>, No. 05-00585 CW (N.D. Cal.) ($12.8 million settlement of wage and hour class and collective action in 2007); <u>Trotter v. Perdue Farms</u>, Case No. 99 893 (RRM) (U.S.D.C. Del.) ($10 million settlement in wage and hour case in 2002); <u>Thomas v. CSAA</u>, No. CH217752 (Alameda County Sup. Ct.) ($8 million settlement of insurance claim adjuster overtime case in 2002); <u>Gottlieb, et al v. SBC Communications, et al.</u>, No. CV-00-4139 AHM (C.D.Cal.) ($10 million ERISA settlement in 2002); <u>Buttram v. UPS</u>, No. 97-1590 MJJ (N.D. Cal.) ($12.2 million settlement, plus comprehensive injunctive relief, of race discrimination action, in 1999); <u>Church v. Consolidated Freightways, Inc.</u>, 1993 WL149840 (N.D. Cal.) ($13.5 million settlement in age discrimination case in 1993); <u>In re California Micro Devices Securities Litigation</u>, C 94 2817 VRW (N.D. Cal.) ($26 million in settlements -- approximately 100% of losses); <u>In re Network Associates, Inc. Securities Litigation</u>, C 99 1729 WHA (N.D. Cal.) ($30 million settlement in 2001); <u>In re Mediavision Technology Securities Litigation</u>, C 94 1015 EFL (N.D. Cal.) (settlements and judgments totaling $218 million).

**Thorough Investigation And Litigation of the Class Claims**

13.     **Overview.**  Before and during the formal litigation of this action, I and my co-counsel conducted a thorough investigation into the merits of the potential claims and defenses.  We focused our investigation on both the underlying merits of class members' misclassification claims – including both factual and legal issues – and the propriety of class certification.

14.     **Pre-filing investigation.**  During the pre-filing stage, my co-counsel and I interviewed a number of the defendant's technical support workers.  Those persons provided us with information regarding their job duties, the overtime hours they worked, and Cadence's organizational structure.

15. Based on our pre-filing investigation, we prepared and filed a complaint on May 30, 2007, alleging violations of the FLSA, ERISA, and the wage and hour laws of California.

16. **Discovery and Informal Factual Investigation.** Plaintiff's counsel engaged in four major types of factual investigation through conventional discovery. First, we requested and reviewed thousands of pages of documents produced by Cadence. Second, Plaintiff's counsel conducted thorough interviews of potential class members and witnesses who had contacted us after we sent a letter to class members, using a list of names and addresses provided by Cadence. As a result of these interviews, we received approximately ten signed declarations from Cadence technical workers that described their duties and overtime hours worked in detail. Third, Plaintiff's counsel analyzed electronic data produced by Cadence containing payroll, job position, and hours. These data consisted of identifying information, state of employment, job title, job band, salary, hours reported, dates of employment, and many other fields of data. Fourth, Plaintiff's counsel conducted the depositions of several corporate representatives of Cadence. In addition, Plaintiff's counsel defended the deposition of the named plaintiff. Extensive analyses of these documents, declarations, depositions, and data enabled us to assess the strengths and weaknesses of the factual case by the time of the mediation sessions.

17. For its part, Cadence conducted written and testimonial discovery regarding, among other things, plaintiff's individual and class liability and damages claims and plaintiff's contentions regarding class and collective action certification. Plaintiff provided written responses to numerous requests for production of documents, and produced hundreds of pages of documents.

18. **Legal Analysis.** In addition to the legal analyses we conducted prior to filing the complaint, we performed a comprehensive legal analysis prior to the first mediation session. By the time of the mediation, we were fully informed about the strengths and weaknesses of the case. Plaintiff's counsel had, and continue to have, the resources necessary to effectively prosecute large-scale wage and hour class lawsuits such as the present action.

### Arms'-Length Settlement Negotiations

19.   **Overview.**  The formal mediation session took place in San Francisco on January 9, 2008, presided over by David Rotman, an experienced mediator of the San Francisco firm Gregorio, Haldeman, Piazza, Rotman, Frank & Feder LLP.  Prior to, and during these mediation sessions, the parties exchanged comprehensive mediation briefs covering the full range of legal, factual, damages, and class certification issues.

20.   **Arms'-Length negotiations.**  The proposed settlement was negotiated in good faith and at arms' length.  The parties vigorously pressed their positions throughout.  The parties reached an agreement in principle at the mediation, and reduced this agreement to a signed memorandum of understanding on January 9, 2008.  After that, the parties continued their negotiations, exchanging extensive iterations of comments and edits to the proposed settlement agreement, involving every material term.  These negotiations culminated in the signing of a Joint Stipulation of Settlement and Release on February 27 2008, a copy of which is attached to the proposed Preliminary Approval Order.  The settlement creates a $7.5 million common fund on behalf of approximately 207 Cadence employees.  The anticipated recovery per class member is more than $25,000.

### Fair, Reasonable, And Adequate Settlement

21.   In my view, the settlement constitutes a fair, reasonable, and adequate result for the class members in light of the risks, expenses, and delay of further litigation, as well as the strengths and weaknesses of the class members' claims.  The plan of allocation provides an appropriate weighting to each class members' claim based on the strengths of his or her claim on the merits.  I base these opinions on the extensive discovery we have performed and my experience prosecuting other large wage and hour class actions.

22.   The Class is readily and individually identifiable from Cadence's payroll records, and the Parties have determined that a significant percentage of the Class Members remain employed by the company.  Due to the accuracy of Cadence's records, the small size of the class, and the obligations imposed on the Settlement Administrator by the Settlement, the Parties believe that there is no need for local newspaper advertisements or regional or national publications.

- 6 -   DECL. OF FINBERG ISO JOINT MOT. FOR PRELIM. APPROVAL OF SETTLMNT - CASE NO. 07-2813 JW

I declare under penalty of perjury, under the laws of the United States, that the foregoing is true and correct. Executed this 27th day of February 2008, at San Francisco, California.

_____
JAMES M. FINBERG