JAMES M. FINBERG (SBN 114850)
PETER E. LECKMAN (SBN 235721)
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, California 94108
Telephone: (415) 421-7151
Facsimile: (415) 362-8064
E-mails: jfinberg@altshulerberzon.com
         pleckman@altshulerberzon.com

KELLY M. DERMODY (SBN 171716)
JAHAN C. SAGAFI (SBN 224887)
LIEFF, CABRASER, HEIMANN
& BERNSTEIN, LLP
275 Battery Street, 30th Floor
San Francisco, California 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008
E-mails: kdermody@lchb.com
         jsagafi@lchb.com

Attorneys for Plaintiff Ahmed Higazi

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AHMED HIGAZI, on behalf of himself and a class of those similarly situated,<br><br>          Plaintiff,<br><br>    v.<br><br>CADENCE DESIGN SYSTEMS, INC.,<br><br>          Defendant. | No. C-07-2813-JW<br><br>**NOTICE OF MOTION AND MOTION FOR AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES; MEMORANDUM IN SUPPORT OF MOTION**<br><br>Date:        July 7, 2008<br>Time:       9:00 a.m.<br>Courtroom:  8<br>Judge:     Hon. James Ware |

1

## NOTICE OF MOTION AND MOTION

2    PLEASE TAKE NOTICE that on July 7, 2008, at 9:00 a.m., or as soon thereafter as the matter

3    may be heard in Courtroom 8 of this Court, located at 280 South 1st Street, San Jose, California,

4    plaintiff Ahmed Higazi will, and hereby does, move this Court for an award of $1,875,000 in attorneys'

5    fees and reimbursement of $45,911.17 in costs and expenses.

6    As more fully discussed in the following memorandum in support of the motion, this motion is

7    made on the grounds that the requested award is fair, reasonable, and appropriate under the common

8    fund doctrine.  The requested award represents slightly less than 25% of the settlement fund, the Ninth

9    Circuit's benchmark for common fund awards.

10    The motion is based on this notice; the following memorandum in support of the motion; the

11    memorandum in support of the joint motion for final approval and its supporting declarations; the First

12    Amended Joint Stipulation of Class Settlement and Settlement Agreement and Release ("Settlement

13    Agreement," available at Docket No. 61); the Declaration of James M. Finberg in Support of Motion for

14    Final Approval and an Award of Attorneys' Fees and Reimbursement of Expenses; the Declaration of

15    Jahan C. Sagafi in Support of (1) Joint Motion For Final Approval Of Class Action Settlement, (2)

16    Plaintiff's Motion For Award of Attorneys' Fees, And (3) Plaintiff's Motion For Award of Class

17    Representative Service Payment; the Court's record of this action; all matters of which the Court may

18    take notice; and any oral and documentary evidence presented at the hearing on the motion.

19
20    Dated:   June 19, 2008.

21    JAMES M. FINBERG
     PETER E. LECKMAN
22    ALTSHULER BERZON LLP

23    KELLY M. DERMODY
     JAHAN C. SAGAFI
24    LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP

25    By:  _____  /s/ James M. Finberg  _____
26                              James M. Finberg
                               Attorneys for Plaintiff
27                              Ahmed Higazi

28

# TABLE OF CONTENTS

I.   INTRODUCTION ...................................................................................................1

II.  RELEVANT BACKGROUND .................................................................................2

    A.   Class Counsel Carefully Analyzed The Case Before
        Beginning Settlement Negotiations ................................................................2

    B.   The Settlement Is Highly Beneficial To The 207 Class Members.......................3

    C.   Class Counsel Devoted Substantial Time and
        Resources to this Litigation ....................................................................4

    D.   Class Members' Response To The Settlement and the
        Request for Fees and Costs Has Been Entirely Positive......................................4

III.  ARGUMENT ........................................................................................................5

    A.   Counsel Are Entitled To an Award of Attorneys' Fees
        Out of the Common Fund ...................................................................6

        1.   The Equitable Common Fund Doctrine Applies
            When, as in this Case, the   Litigation has Recovered
            a Certain and Calculable Fund on Behalf of a
            Group of Beneficiaries.................................................................6

        2.   The Fee Award Should Be Calculated As a
            Percentage of the Common Fund...................................................6

    B.   The Requested Fee Award Is Less Than The 25 Percent
        Benchmark Established by the Ninth Circuit.......................................................8

    C.   The Requested Fee Award is Fair and Reasonable ...............................................9

    D.   The Requested Fees are Reasonable Under a Lodestar Crosscheck..................10

    E.   Class Counsel are Entitled to Recover Their
        Out-of-Pocket Expenses, Which Are Reasonable and
        Have Inured to the Benefit of the Class...........................................................12

IV.  CONCLUSION.....................................................................................................13

1

2

## TABLE OF AUTHORITIES

3

### CASES

*Antonopulos v. N. America Thoroughbreds, Inc.*,
   1991 WL. 427893 (S.D. Cal. May 6, 1991)...................................................................5

*Beech Cinema, Inc. v. Twentieth-Century Fox Film Corp.*,
   480 F. Supp. 1195 (S.D.N.Y. 1979)...........................................................................9

*Blum v. Stenson*,
   465 U.S. 886 (1984)...............................................................................1, 5, 6

*Boeing Co. v . Van Gemert*,
   444 U.S. 472 (1980)...........................................................................................6

*Camden I Condominium Association, Inc. v. Dunkle*,
   946 F.2d 768 (11th Cir. 1991) ................................................................................8

*Central R.R. & Banking Co. v. Pettus*,
   113 U.S. 116 (1885).........................................................................................6

*Chemical Bank v. City of Seattle (In re Washington Public Power Supply Sec. Litigation)*,
   19 F.3d 1291 (9th Cir. 1994) ..........................................................................1, 5

*Class Plaintiffs v. City of Seattle*,
   955 F.2d 1268 (9th Cir. 1992) .............................................................................10

*Class Plaintiffs v. Jaffe & Schlesinger, P.A.*,
   19 F.3d 1306 (9th Cir. 1994) ...............................................................................5

*Gerlach v. Wells Fargo & Co., Slip Copy*,
   2007 WL. 163189 (N.D. Cal, Jan. 19, 2007) ...........................................................6, 8

*Harris v. Marhoefer*,
   24 F.3d 16 (9th Cir. 1994) ..................................................................................12

*In re Activision Sec. Litigation*,
   723 F. Supp. 1373 (N.D. Cal. 1989) ................................................................7, 8, 9

*In re Ampicillin Antitrust Litigation*,
   526 F. Supp. 494 (D.D.C. 1981) ...........................................................................9

*In re GNC Shareholder Litigation*,
   668 F. Supp. 450 (W.D. Pa. 1987)........................................................................13

*In re M.D.C. Holdings Sec. Litigation*,
   1990 WL. 454747 (S.D. Cal. Aug. 30, 1990) ............................................................5

*In re Mego Finance Corp. Sec. Litigation*,
   213 F.3d 454 (9th Cir. 2000) ...............................................................................5

28

*In re Omnivision Techs., Inc.,*
  2007 WL. 4293467 (N.D. Cal. Dec. 6, 2007) ............................................................5

*In re Pacific Enterprises Sec. Litigation,*
  47 F.3d 373 (9th Cir. 1995) .......................................................................................9

*In re Public Serv. Co. of New Mexico,*
  1992 WL. 278452 (S.D. Cal. July 28, 1992) ............................................................5

*In re Safety Components, Inc. Sec. Litigation,*
  166 F. Supp. 2d 72 (D.N.J. 2001) ...........................................................................11

*Leonard v. Baumer (In re United Energy Corp. Sec. Litigation),*
  1989 WL. 73211 (C.D. Cal. March 9,1989) ...........................................................12

*Missouri v. Jenkins by Agyei,*
  491 U.S. 274 (1989) ...................................................................................................7

*Morganstein v. Esber,*
  768 F. Supp. 725 (C.D. Cal. 1991) ........................................................................6, 8

*Officers for Justice v. Civil Serv. Commission,*
  688 F.2d 615 (9th Cir. 1982) ...................................................................................10

*Paul, Johnson, Alston & Hunt v. Graulty,*
  886 F.2d 268 (9th Cir. 1989) ............................................................................ passim

*Six Mexican Workers v. Arizona Citrus Growers,*
  904 F.2d 1301 (9th Cir. 1990) ........................................................................1, 5, 6, 8

*State of Fla. v. Dunne,*
  915 F.2d 542 (9th Cir. 1990) .....................................................................................8

*Staton v. Boeing Co.,*
  327 F.3d 938 (9th Cir. 2003) .....................................................................................6

*Sutton v. Bernard,*
  504 F.3d 688 (7th Cir. 2007) .....................................................................................7

*Swedish Hospital Corp. v. Shalala,*
  1 F.3d 1261 (D.C. Cir. 1993) .....................................................................................7

*UEC Corp. Sec. Litig.,* Fed. Sec. L. Rep. P 94,376,
  1989 WL. 73211 (C.D. Cal. Mar. 9, 1989) .............................................................13

*Van Gemert v. Boeing Co.,*
  516 F. Supp. 412 (S.D.N.Y. 1981) ............................................................................9

*Vincent v. Hughes Air West. Inc.,*
  557 F.2d 759 (9th Cir. 1977) .................................................................................5, 12

*Vizcaino v. Microsoft Corp.,*
  290 F.3d 1043 (9th Cir. 2002) .......................................................................... passim

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,*

396 F.3d 96 (2d Cir. 2005)..............................................................................11

**MISCELLANEOUS**

Conte, *Attorneys' Fee Awards* § 2.08 at 50-51 (2d ed. 1977)............................................13

Newberg, *Attorney Fee Awards* § 2.19 (1987) ..................................................................12

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1    **MEMORANDUM IN SUPPORT OF MOTION**

2    **I.    INTRODUCTION**

3         Having secured this $7,664,857 settlement on behalf of the class, plaintiff's counsel seek an

4    attorneys' fee award of $1,875,000.  This amount represents slightly less than 25 percent of the

5    settlement fund (24.4%), the Ninth Circuit's benchmark for fee awards in such circumstances.  *See*

6    *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *Chemical Bank v. City of Seattle (In*

7    *re Washington Public Power Supply Sec. Litig.*), 19 F.3d 1291, 1297 (9th Cir. 1994); *Paul, Johnson,*

8    *Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989); *Six Mexican Workers v. Arizona Citrus*

9    *Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990).

10        The requested award is fair, reasonable, and appropriate under the common fund doctrine.  *See*

11   *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984).  Plaintiffs' counsel have obtained an exceptional result

12   for the 207 members of the plaintiff class.  Nearly 88 percent of the class (182 of 207) have filed claim

13   forms, an outstanding participation rate.  Each of these 182 class members will be receiving an average

14   of $42,115 of the gross settlement amount.  Even after deducting the requested attorneys' fees

15   ($1,875,000), the requested litigation expenses ($45,911.17), the named-plaintiff service payment

16   ($15,000), the payment to the California Labor Workforce Development Agency (the "LWDA")

17   ($20,000), the employer's share of taxes on that part of the settlement that constitutes wages

18   (approximately $200,000), and the costs of claim administration ($15,000) – the 182 class members who

19   have submitted claims will each receive an average of over $30,000.  Unsurprisingly, not a single class

20   member has objected to the settlement or even opted out of the settlement.  No class member has

21   objected to the requested attorneys' fees.

22        Plaintiffs' counsel also seek reimbursement of litigation expenses in the amount of $45,911.17.

23   The costs were all incurred in connection with the prosecution of the action and the execution of the

24   settlement and are reasonable and proper.  No class member has objected to the requested

25   reimbursement of these expenses.

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## II.    BACKGROUND

### A.    Class Counsel Carefully Analyzed The Case Before Beginning Settlement Negotiations.

The law firms of Altshuler Berzon LLP and Lieff, Cabraser, Heimann & Bernstein, LLP are class counsel in this case.  On behalf of named plaintiff, Ahmed Higazi, class counsel filed a complaint on March 30, 2007, contending that Mr. Higazi's former employer, Cadence Design Systems, Inc. ("Cadence"), misclassified certain information technology workers as exempt from the overtime requirements of the Fair Labor Standards Act ("FLSA") and the wage-and-hour laws of the State of California.  (Complaint, ¶ 15, Docket No. 1.)  In addition, the complaint alleged that due to this misclassification, Cadence violated the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*  (*Id.*, ¶¶ 16-18.)

Cadence disputed, and continues to dispute, plaintiff's allegations, expressly denying any liability for any of the claims that plaintiff raised.  (*See generally* Amended Answer to Complaint, Docket No. 41.)

Despite their adversarial positions, the parties agreed to commence discovery promptly following their August 24, 2007 Rule 26(f) Conference in order to assess the strengths and weaknesses of their respective arguments.  (Declaration of James M. Finberg in Support of Motion for Award of Attorneys' Fees and Reimbursement of Expenses, "Finberg Decl.," ¶¶ 15-16.)  In the course of this discovery, plaintiff obtained written and testimonial evidence regarding: (1) Class Members' employment with Cadence; (2) Cadence's compliance with the FLSA, California wage-and-hour laws, and ERISA; (3) Cadence policies and procedures regarding the company's classification of Class Members; (4) company policies and practices regarding recording of hours worked by potential Class Members; (5) the job tasks, assignments, duties, and functions of potential Class Members; (6) formal and informal training received by potential Class Members regarding how to perform their job tasks, assignments, duties, and functions; and (7) hours worked and compensation paid to potential Class Members.  (*Id.*) Class counsel reviewed and analyzed thousands of pages of documents and, with the assistance of an expert, analyzed data from Cadence's payroll and human resources databases, job descriptions and other documents related to job duties and responsibilities, job posting data, orientation materials, pension plan

1   documents, human resource policies and procedures, compensation policies and procedures, and

2   documents related to company classification decisions.  (*Id.*)

3       In addition, Plaintiff's counsel also deposed three Cadence executives pursuant to Federal Rule

4   of Civil Procedure 30(b)(6), exploring topics such as Cadence's policies and procedures for classifying

5   positions, the company's organizational structure, and the job duties and responsibilities of Class

6   Members.  (*Id.*)

7       For its part, Cadence conducted written and testimonial discovery regarding, among other things,

8   plaintiff's individual and class liability and damages claims and plaintiff's contentions regarding class

9   and collective action certification.  (*Id.*)  Plaintiff provided written responses to numerous requests for

10  production of documents, and produced hundreds of pages of documents.  (*Id.*)  Cadence also deposed

11  the plaintiff in an all-day deposition.  (*Id.*)

12      After conducting this discovery, and after class counsel was thoroughly familiar with the

13  strengths and weaknesses of their case, the parties began settlement discussions.  The parties agreed to a

14  private mediation with experienced mediator David A. Rotman of the San Francisco firm of Gregorio,

15  Haldeman, Piazza, Rotman, Frank & Feder LLP.  (*Id.*, ¶¶ 17-18.)  Prior to this mediation, the parties

16  exchanged detailed mediation briefs that included their respective assessments of the case and

17  appendices containing several hundred pages of supporting documentation and evidentiary materials.

18  (*Id.*)  The mediation took place on January 9, 2008.  (*Id.*)  After more than 12 hours, the parties reached

19  a settlement in principle.  (*Id.*)  Thereafter, the parties continued their arms-length negotiations to

20  finalize the settlement.  (*Id.*)

21      Subsequently, the parties realized that 11 Class Members had worked in 5 non-Class positions

22  during the Class Period that were sufficiently similar to the 31 Class Positions to warrant inclusion in the

23  settlement.  (Declaration of Jahan C. Sagafi in Support of (1) Joint Motion For Final Approval Of Class

24  Action Settlement, (2) Plaintiff's Motion For Award of Attorneys' Fees, And (3) Plaintiff's Motion For

25  Award of Class Representative Service Payment ("Sagafi Decl."), ¶ 14.)  After some negotiation, the

26  parties agreed that the Settlement Fund should be increased by $164,856.61 (plus interest on that amount

27  calculated consistently with the interest calculation for the original $7,500,000 of the Settlement Fund)

28  to provide additional compensation to credit these 11 Class Members for the time during the Class

1    Period that they had worked in these new 5 positions. (*Id.*, ¶ 15.) The additional $164,856.61 was

2    derived as a pro-rata increase to the Net Settlement Fund, based on the assumption that no attorneys'

3    fees or costs would be paid from it. (*Id.*, ¶ 16.) Class counsel doesnot seek fees or costs from this

4    additional portion. (*Id.*, ¶ 17.) Thus, the total Settlement Fund was increased to $7,664,856.61 (plus

5    interest). (*Id.*)

6        **B.**    **The Settlement Is Highly Beneficial To The 207 Class Members.**

7        The settlement is exceptional. The class is recovering the highest amount ever received per

8    person in a technology worker misclassification case. (Finberg Decl., ¶ 20.) Each class member who

9    submits a timely and valid claim form is eligible to receive a specified share of the $7.66 million

10    settlement fund.[1] (Settlement, § XIII.A.2.) Even after deductions for the class representative payment,

11    class counsel's attorneys' fees and costs Payment, the $20,000 payment to the California Labor

12    Workforce Development Agency, employer taxes, and the costs of claim administration, the 182

13    claimants will receive, on average, more than $30,000 each. (Finberg Decl., ¶ 19.) The entire settlement

14    fund will be paid out; none will revert to Cadence.

15        **C.**    **Class Counsel Devoted Substantial Time And Resources To This Litigation.**

16        Over a period of 18 months, class counsel have devoted 1,224.4 hours to the prosecution of this

17    action, having a lodestar value of $501,998. (Sagafi Decl. ¶42, Exs. A & B; Finberg Decl. ¶ 23, Exs. B

18    & C.) Also, class counsel paid $45,911.17 in out of pocket costs. (Sagafi Decl. ¶47, Ex. C; Finberg

19    Decl. ¶¶ 30-31, Ex D.) Class counsel expended this effort without any guarantee of recovery. (Sagafi

20    Decl. ¶ 40; Finberg Decl. ¶¶ 21, 30.) Class counsel also gave up the opportunity to pursue other work

21    during this time period. (Sagafi Decl. ¶40; Finberg Decl. ¶ 21.)

22

23

24

---

25    [1] The initial settlement amount was $7.5 million. During claims administration, the parties learned that

26    certain additional job titles should be included as part of the class. As these job titles were low-level
introductory positions, their addition did not increase the size of the class, only the number of

27    compensable work weeks for the existing 207 class members. Compensation for these additional work
weeks were calculated on the same basis as the existing settlement, increasing the total settlement fund

28    by approximately $164,857.

**D.    Class Members' Response To The Settlement And The Request For Fees And Costs Has Been Entirely Positive.**

Notice of the Court's preliminary approval of the settlement and claim forms were sent to the class on April 4, 2008.  The notice explained that "counsel, who have not been paid for their time litigating the case or their out-of-pocket costs they have incurred in the case, will request that the Court approve a payment of 25% of . . . the Settlement Fund ($1,875,000) to compensate them for their time and effort in bringing this case, and that it award them an amount up to $50,000 to reimburse them for the out-of-pocket costs they have incurred during the litigation."  First Amended Joint Stipulation of Class Settlement and Settlement Agreement and Release (Docket No. 61), Ex. B.  Class members had more than six weeks, until May 20, 2008, to decide whether to object or opt out of the settlement.  No class member objected to the settlement or to the request for attorneys' fees and costs.

Nearly 88 percent of the class submitted claim forms (182 of 207), representing over 90% of the apportioned amount of the fund.   (Declaration of Trae Smith Describing Settlement Administration ("Smith Decl."), ¶¶ 8, 12, & Ex. G.)  This high participation rate and the lack of *any* objections reflect the class's strong support for the settlement, and demonstrate that the request for fees and costs is reasonable.

## III.    ARGUMENT

"[A] private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys fees." *Vincent v. Hughes Air West. Inc.* 557 F.2d 759, 769 (9th Cir. 1977); *see also Class Plaintiffs v. Jaffe & Schlesinger, P.A.*, 19 F.3d 1306, 1308 (9th Cir. 1994).  The traditional method for calculating a fee award in common fund cases is to award counsel a percentage of the total fund.  *See Blum*, 465 U.S. at 900 n.16.

In the Ninth Circuit, 25 percent of the common fund is the "benchmark" for an attorneys' fees award.  *See, e.g., Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *Chemical Bank v. City of Seattle (In re Washington Public Power Supply Sec. Litig.)*, 19 F.3d 1291, 1297 (9th Cir. 1994); *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989); *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990).  Courts frequently award fees greater

than this amount. *See, e.g., In re Omnivision Techs., Inc.*, 2007 WL 4293467, at *10 (N.D. Cal. Dec. 6, 2007) ("in most common fund cases, the award exceeds that [25%] benchmark"); *see, e.g., In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 460 (9th Cir. 2000) (affirming award of fees equal to one-third of total recovery); *In re Public Serv. Co. of New Mexico*, 1992 WL 278452, at *1, *12 (S.D. Cal. July 28, 1992) (awarding one-third); *Antonopulos v. N. Am. Thoroughbreds, Inc.*, 1991 WL 427893, at *1, *4 (S.D. Cal. May 6, 1991) (awarding one-third); *In re M.D.C. Holdings Sec. Litig.,* 1990 WL 454747, at *1, *10 (S.D. Cal. Aug. 30, 1990) (awarding 30% in fees, plus expenses). Here, the requested award of $1,875,000 represents 24.4% of the settlement fund, less than the Ninth Circuit's 25% benchmark.

### A.    Counsel Are Entitled To an Award of Attorneys' Fees Out of the Common Fund.

#### 1.    The Equitable Common Fund Doctrine Applies When, As In This Case, The Litigation Has Recovered A Certain And Calculable Fund On Behalf Of A Group Of Beneficiaries.

For well over a century, federal and state courts have recognized that when counsel's efforts result in the creation of a common fund that benefits plaintiffs and unnamed class members, counsel have an equitable right to be compensated from that fund as a whole for their successful efforts in creating it. *See, e.g., Boeing Co. v . Van Gemert*, 444 U.S. 472, 478 (1980) (the United States Supreme Court "has recognized consistently that a litigant or a lawyer who recovers a common fund … is entitled to a reasonable attorney's fee from the fund as a whole"); *Central R.R. & Banking Co. v. Pettus*, 113 U.S. 116 (1885) (recognizing common fund doctrines); *Staton v. Boeing Co.*, 327 F.3d 938, 967 (9th Cir. 2003) (same).

The common fund doctrine rests on the understanding that attorneys should normally be paid by their clients. *Boeing*, 444 U.S. at 478. Where the attorneys' unnamed class member clients have no express retainer agreement, those who benefit from the fund without contributing to it would be unjustly enriched if attorneys' fees were not paid out of the common fund. *Id.*

This litigation has resulted in a settlement fund of $7,664,857 to be distributed to the 182 class members who submitted timely claims. Because none of these individuals have paid plaintiffs' counsel fees for their efforts during the litigation, equity requires them to pay a fair and reasonable fee, based on what the market would traditionally require, no less than if they had hired private counsel to litigate their cases individually. *Id.* at 479-481.

1

2    **2.     The Fee Award Should Be Calculated As A Percentage Of The Common Fund.**

3        The fairest and most efficient way to calculate a reasonable fee when contingency fee litigation

4    has produced a common fund is by awarding class counsel a percentage of the total fund.  *See, e.g.,*

5    *Blum*, 465 U.S. at 900 n.16; *Six Mexican Workers*, 904 F.2d at 1311 (common fund fee is generally

6    "calculated as a percentage of the recovery"); *Paul, Johnson, Alston & Hunt,* 886 F.2d at 272; *Gerlach*

7    *v. Wells Fargo & Co.*, Slip Copy, 2007 WL 163189, *1 (N.D. Cal, Jan. 19, 2007); *Morganstein v. Esber*,

8    768 F. Supp. 725, 728 (C.D. Cal. 1991).

9        The percentage of the fund method is appropriate for a number of reasons.  The percentage

10   method comports with the legal marketplace, where counsel's success is frequently measured in terms of

11   the results counsel has achieved.  *See Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1269 (D.C. Cir.

12   1993) (in common fund cases "the monetary amount of the victory is often the true measure of

13   [counsel's] success").  By assessing the amount of the fee in terms of the amount of the benefit

14   conferred on the class, the percentage method "more accurately reflects the economics of litigation

15   practice" which, "given the uncertainties and hazards of litigation, must necessarily be result-oriented."

16   *Id.* (internal quotation marks and citation omitted).

17       When clients do not pay an ongoing hourly fee to their counsel, they typically negotiate an

18   agreement in which counsel's fee is based upon a percentage of any recovery.  The percentage of the

19   fund approach mirrors this aspect of the market and, accordingly, reflects the fee that would have been

20   negotiated by the class members in advance, had such negotiations been feasible, given the prospective

21   uncertainties and anticipated risks and burdens of the litigation.  *See, e.g., Paul, Johnson, Alston & Hunt*,

22   886 F.2d at 271 ("it is well settled that the lawyer who creates a common fund is allowed an extra

23   reward, beyond that which he has arranged with his client, so that he might share the wealth of those

24   upon whom he has conferred a benefit"); *Sutton v. Bernard*, 504 F.3d 688, 692 (7th Cir. 2007) ("In

25   deciding fee levels in common fund cases, we have consistently directed district courts to 'do their best

26   to award counsel the market price for legal services, in light of the risk of nonpayment and the normal

27   rate of compensation in the market at the time.'") (quoting *In re Synthroid Mktg. Litig.*, 264 F.3d 712,

28   718 (7th Cir. 2001)); *cf. Missouri v. Jenkins by Agyei*, 491 U.S. 274, 285 (1989) (market factors should

1  be considered in evaluating reasonableness).

2       This market-based percentage approach to common fund fee awards has other benefits and

3  advantages as well.  Because the percentage approach mimics the market, it helps provide highly

4  qualified attorneys the necessary incentive to bring large, complex class actions, even though by

5  definition it is impossible in such cases to negotiate a fee with the unnamed class members in advance.

6  The percentage method is also far easier for courts to calculate than any alternative method.  *Id.*; *In re*

7  *Activision Sec. Litig.*, 723 F. Supp. 1373, 1378 (N.D. Cal. 1989).

8       An additional strength of the percentage approach is that it aligns the incentives of the class and

9  its counsel and thus encourages counsel to spend their time efficiently and to focus on maximizing the

10  size of the class' recovery, rather than their own lodestar hours.  As Judge Patel wrote in criticizing the

11  inflexibility of the lodestar approach:

12      The question this court is compelled to ask is, "Is this [lodestar] process necessary?"
    Under a cost-benefit analysis, the answer would be a resounding, "No!"  Not only do
13      [lodestar] analyses consume an undue amount of court time with little resulting advantage
    to anyone, but, in fact, it may be to the detriment of the class members.  They are forced to
14      wait until the court has done a thorough, conscientious analysis of the attorneys' fee
    petition.  Or, class members may suffer a further diminution of their fund when a special
15      master is retained and paid from the fund.  *Most important, however, is the effect the*
    *process has on the litigation and the timing of settlement.  Where attorneys must depend on*
16      *a lodestar approach there is little incentive to arrive at an early settlement.*

17  *In re Activision Securities Litigation*, 723 F.Supp. 1373, 1375 (N.D. Cal. 1989) (emphasis added); *see*

18  *also Vizcaino*, 290 F.3d at 1050 n.5 ("it is widely recognized that the lodestar method creates incentives

19  for counsel to expend more hours than may be necessary on litigating a case so as to recover a

20  reasonable fee, since the lodestar method does not reward early settlement."); *State of Fla. v. Dunne,*

21  915 F.2d 542, 545 (9th Cir. 1990) (recognizing a "recent ground swell of support for mandating a

22  percentage-of-the-fund approach in common fund cases"); *Camden I Condominium Ass'n, Inc. v.*

23  *Dunkle*, 946 F.2d 768, 773 (11th Cir. 1991) ("every Supreme Court case addressing the computation of a

24  common fund fee award has determined such fees on a percentage of the fund basis.").

25       In light of these benefits, courts have resoundingly approved the percentage of the fund method

26  for calculating a reasonable fee award in common fund cases.  In this case, the award of counsels'

27  common fund fees should be assessed as a percentage of the total fund that will be distributed to the

28  class.

**B.    The Requested Fee Award Is Less Than The 25 Percent Benchmark Established By The Ninth Circuit.**

In determining what constitutes a fair and reasonable percentage of a settlement fund for purposes of calculating common fund fees, the Ninth Circuit has stated that courts look to a "benchmark" percentage of 25 percent of the total fund.  *Paul, Johnson, Alston & Hunt*, 886 F.2d at 272; *Vizcaino*, 290 F.3d at 1047; *Six Mexican Workers*, 904 F.2d at 1311; *Gerlach*, 2007 WL 163189, at *1; *Morganstein*, 768 F. Supp. at 728 ("[a]s stated, *Paul, Johnson* establishes 25 percent as the benchmark for common fund cases").[2]  Here, class counsel is asking for an amount – 24.4% of the fund – that is slightly lower than the Ninth Circuit's established benchmark.

**C.    The Requested Fee Award Is Fair And Reasonable.**

The requested percent of the common fund is justified by the financial risks undertaken by Plaintiffs' counsel in this litigation.  Counsel accepted and litigated this class action solely on a contingency fee basis.  Counsel has received no compensation for the outlay of attorney time, nor for any of the considerable expenses incurred.  Moreover, there has never been any guarantee that counsel would be reimbursed for the costs, or paid for their time.  No matter how many hours put in, no matter how burdensome the litigation, there would be no payment unless Plaintiffs prevailed.

This litigation involved risk and complexity.  (Finberg Decl., ¶ 21.)  The complaint alleged that Cadence had failed to pay overtime to hundreds of current and former information technology employees, who worked on a many separate job titles at many different Cadence locations.  (*Id.*)

---

[2] In approving an award of 28 percent of the $96,885,000 settlement fund, the *Vizcaino* court surveyed attorneys' fees awards in so-called "megafund" cases  -- that is, common fund settlements of $50-200 million -- found in the Westlaw ALLCASES database and Class Action Reports' attorneys' fees section from Jan. 1, 1996 through Dec. 31, 2001.  *Vizcaino*, 290 F.3d at 1046 n.1, & Appendix.  Even where the common funds fell into this megafund range, the *Vizcaino* court noted that a majority of fee awards were "clustered in the 20-30 percent range."  *Id.* at 1050 n.4, & Appendix.  In common fund settlements of less than $50 million, such as this one, courts have awarded a higher percentage of the common fund as attorneys' fees.  *See, e.g., In re Pacific Enterprises Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (affirming an award equal to 33 percent of the common fund); *In re Activision Sec. Litig.*, 723 F. Supp. at 1375 (awarding plaintiffs' counsel 32.8 percent of the common fund created to settle the litigation); *In re Ampicillin Antitrust Litig.*, 526 F. Supp. 494, 498 (D.D.C. 1981) (awarding 45 percent of $7.3 million settlement fund); *Beech Cinema, Inc. v. Twentieth-Century Fox Film Corp.*, 480 F. Supp. 1195, 1199 (S.D.N.Y. 1979), *aff'd* 622F.2d 1106 (2nd Cir. 1980) (approximately 53 percent of settlement fund awarded); *Van Gemert v. Boeing Co.*, 516 F. Supp. 412, 420 (S.D.N.Y. 1981).

1   Cadence asserted several defenses, including contending that the class members diverse job titles and

2   positions would make certifying this action as a class action difficult.  (*Id.*)

3        The fairness of this fee award is further supported by the high quality of Plaintiffs' counsel's

4   legal representation.  The efforts expended by Class Counsel in this case are described above and are

5   extensively described in the Declarations of James M. Finberg and Jahan C. Sagafi.  As these

6   declarations reflect, Plaintiff's counsel's diligent and efficient pursuit of this matter positioned Plaintiff

7   to successfully settle this case for over $7.6 million, to provide meaningful redress for the entire Class,

8   and to avoid the inevitable expense and risk attendant to protracted litigation.

9        The response of the class supports a decision that the fee request is fair and reasonable.  The

10  requested amount of attorneys' fees was stated expressly in the Notice of Proposed Class Action

11  Settlement and Settlement Hearing.  Class Members had over six weeks to object to Class Counsels'

12  request for fees and costs.  No objections to either the percentage of the common fund sought as

13  attorneys' fees or to the award of costs sought by Class Counsel have been received by counsel or the

14  claims administrator.  Smith Decl. at ¶ 12; Sagafi Decl. at ¶ 18.  In fact, no class member has objected to

15  any aspect of the settlement agreement, and no one has opted out.  Smith Decl. at ¶¶ 11-12.  The absence

16  of any objections to the fees and costs requested supports the conclusion that the requested award is fair,

17  adequate, and reasonable.  *See generally Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992)

18  (affirming district court's order approving settlement agreement and allocation plan over objections by

19  several groups of bondholders); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982)

20  (affirming district court's order approving consent decree over objections by a class representative).

21        **D.    The Requested Fees Are Reasonable Under A Lodestar Crosscheck.**

22        A lodestar cross-check confirms that the percentage requested is reasonable.  *See Vizcaino*, 290

23  F.3d at 1050 ("while the primary basis of the fee award remains the percentage method, the lodestar may

24  provide a useful perspective on the reasonableness of a given percentage award").  The accompanying

25  declarations of James M. Finberg and Jahan C. Sagafi set forth the number of hours and rates used to

26  calculate Class Counsel's lodestar.  As described in those declarations, Class Counsel have devoted

27  1,225.8 hours to this litigation.  (Sagafi Decl. ¶ 42, Exs. A & B; Finberg Decl. ¶ 23, Exs. B & C.)  In

28  reaching this figure, Class Counsel have exercised billing judgment, reducing hours billed to exclude

1  redundancies, inefficiencies, or other time not appropriately charged to a paying client. (Sagafi Decl. ¶¶
2  41, 44; Finberg Decl. ¶¶ 22, 25)  Moreover, the attached declarations report time only through June 12,
3  2008, and thus do not include many hours of additional time that Class Counsel have spent and will
4  continue to spend securing final approval of the settlement, counseling Class Members about it, and
5  monitoring the distribution of payments.

6      As reflected above, the tasks performed by Plaintiff's Counsel for the benefit of the class have
7  included interviewing multiple Class Members; drafting declarations; reviewing and analyzing
8  thousands of pages of documents; propounding written discovery; deposing three designated executives
9  of Cadence; defending the deposition of the named plaintiff, analyzing computer data regarding liability
10 and damages issues; retaining and working with an expert statistician; preparing for and participating in
11 mediation; drafting and negotiating the Settlement Agreement and plan of allocation; preparing the
12 motions for preliminary and final approval; and drafting the notice of settlement and claim forms.
13 (Sagafi Decl. ¶¶ 3-17; Finberg Decl. ¶ 24.)  Given these numerous tasks, the hours of work performed
14 by Class Counsel (which have been reduced in the exercise of billing judgment) are reasonable.

15     The rates used in calculating the lodestar are likewise reasonable.  Class Counsel's experience,
16 reputation, and ability, detailed in the accompanying declarations and described in the firm resumes
17 (Sagafi Decl. ¶ 48, Ex. D; Finberg Decl., Ex. A), justify the rates charged.  (Sagafi Decl. ¶ 23-39;
18 Finberg Decl. ¶¶ 1-4, 26-29.)  Further, these rates are commensurate with those prevailing in the Bay
19 Area for attorneys with comparable skill and experience litigating complex wage and hour class and
20 collective actions.  (Finberg Decl. ¶¶ 16-29; Sagafi Decl. ¶ 46 .)  These hourly rates have been paid to
21 counsel by paying clients, Finberg Decl. ¶ 29, and have been approved by other courts.  (Finberg Decl. ¶
22 28.)

23     Based on these reasonable hours and rates, Plaintiffs' raw lodestar is $501,998.[3]  Thus, class
24 counsel seeks a lodestar multiplier of approximately 3.7 to reach the percentage of the common fund
25 requested.  A 3.7 multiplier is typical in common fund settlements such as this one. *See Vizcaino*, 290

26

27 [3] For the Court's convenience, a consolidated summary of all firms' hours and fees is attached as
Exhibit E to the Declaration of James M. Finberg.  A consolidated of all firms' costs is attached as
28 Exhibit D to the Declaration of James M. Finberg.

1  F.3d at 1051 (approving multiplier of 3.65 and citing recent cases approving multipliers as high as 19.6);

2  *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 123 (2d Cir. 2005) (approving multiplier of 3.5);

3  *In re Safety Components, Inc. Sec. Litig.*, 166 F. Supp. 2d 72, 104 (D.N.J. 2001) (approving multiplier of

4  2.81 and citing cases approving multipliers from 2.04 to 3.6); *see also* 3 NEWBERG § 14.03 at 14-5

5  ("multiples ranging from one to four are frequently awarded in common fund cases when the lodestar

6  method is applied.").

7       A multiplier is particularly warranted here not only because of the considerable risk that class

8  counsel incurred by bringing this action and the terrific, substantial recovery for the class, but also

9  because class counsel reached these results quickly and efficiently.  As the Ninth Circuit held in

10  *Vizcaino*, class counsel should not "receive a lesser fee for settling a case quickly; in many instances, it

11  may be a relevant circumstance that counsel achieved a timely result for class members in need of

12  immediate relief."  290 F.3d at 1050 n.5.

13       **E.    Class Counsel Are Entitled To Recover Their Out-of-Pocket Expenses, Which Are
              Reasonable And Have Inured To The Benefit Of The Class.**

14

15       Class Counsel are requesting that they also be reimbursed from the fund for out-of-pocket

16  expenses they incurred during this litigation.  Reimbursement for these expenses from the common fund

17  is appropriate for the same reasons attorneys' fees should be paid out of the fund:  all beneficiaries

18  should bear their fair share of the costs of the litigation, and these are the normal costs of litigation that

19  counsel traditionally bill their paying clients.  *See e.g., Leonard v. Baumer* (*In re United Energy Corp.*

20  *Sec. Litig.*), 1989 WL 73211 *6 (C.D. Cal. March 9,1989) (quoting Newberg, *Attorney Fee Awards,* §

21  2.19 (1987)); *see also Vincent*, 557 F.2d at 769 ("[t]hat is, the doctrine is designed to spread litigation

22  costs proportionately among all the beneficiaries so that the active beneficiary does not bear the entire

23  burden alone and the 'stranger' beneficiaries do not receive their benefits at no cost to themselves").

24  Furthermore, attorneys may be reimbursed for reasonable out-of-pocket expenses that were "incidental

25  and necessary to the representation of those clients."  *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir.

26  1994).

27       To date, Class Counsel have incurred approximately $45,911.17 in litigation costs and expenses

28  and will incur additional costs through the conclusion of this matter.  (Finberg Decl. ¶¶ 30-31.)  These

1  costs include costs associated with retaining an expert to analyze data, engaging a mediator to support

2  the parties' settlement efforts, photocopying, telephone conference calls and mailing expenses, and other

3  reasonable litigation-related costs.  (*Id.* at ¶ 30.)

4      All of these costs were necessary in connection with the prosecution of this litigation and were

5  made for the benefit of the class.  Accordingly, they are reimbursable.  *See In re UEC Corp. Sec. Litig.*,

6  Fed. Sec. L. Rep. P 94,376, 1989 WL 73211, at *6 (C.D. Cal. Mar. 9, 1989); *In re GNC Shareholder*

7  *Litig.*, 668 F. Supp. 450, 452 (W.D. Pa. 1987); Conte, *Attorneys' Fee Awards*, § 2.08 at 50-51 (2d ed.

8  1977).  These costs are quite reasonable for a case of this duration and complexity and should be

9  reimbursed in full.

10  **IV.    CONCLUSION.**

11      For the foregoing reasons, Class Counsel respectfully request that the Court issue an order finally

12  determining and approving the payment of $1,875,000 as reasonable attorneys' fees and the payment of

13  $45,911.17 as reasonable costs.

14

15  Dated:   June 19, 2008.              JAMES M. FINBERG
                                         PETER E. LECKMAN
16                                       ALTSHULER BERZON LLP

17                                       KELLY M. DERMODY
                                         JAHAN C. SAGAFI
18                                       LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP

19

20

21                                By: _____/s/ James M. Finberg_____
                                         James M. Finberg
22                                       Attorneys for Plaintiff
                                         Ahmed Higazi
23

24

25

26

27

28