1  James M. Finberg (SBN 114850)
   Peter E. Leckman (SBN 235721)
2  ALTSHULER BERZON LLP
   177 Post Street, Suite 300
3  San Francisco, CA  94108
   Telephone:  (415) 421-7151
4  Facsimile:   (415) 362-8064
   E-Mail: jfinberg@altber.com
5  E-Mail: pleckman@altber.com

6  Kelly M. Dermody (SBN 171716)
   Jahan C. Sagafi (SBN 224887)
7  LIEFF, CABRASER, HEIMANN &
     BERNSTEIN, LLP
8  275 Battery Street, 30th Floor
   San Francisco, CA 94111-3339
9  Telephone:  (415) 956-1000
   Facsimile:   (415) 956-1008
10 E-Mail: kdermody@lchb.com
   E-Mail: jsagafi@lchb.com
11
   *Attorneys for Plaintiff and the Proposed Class*
12

13              UNITED STATES DISTRICT COURT
                NORTHERN DISTRICT OF CALIFORNIA
14                    SAN JOSE DIVISION

15 | AHMED HIGAZI, on behalf of himself | Case No.  07-2813 JW |
16 | and a class of those similarly situated, | |
   | | **DECLARATION OF JAMES M. FINBERG** |
17 | Plaintiff, | **IN SUPPORT OF MOTION FOR FINAL APPROVAL AND APPLICATION FOR** |
   | v. | **AWARD OF ATTORNEYS' FEES AND** |
18 | | **REIMBURSEMENT OF EXPENSES.** |
19 | CADENCE DESIGN SYSTEMS, INC., | |
   | Defendant. | Date:         July 7, 2008 |
20 | | Time:         9:00 a.m. |
   | | Courtroom:  8 |
21 | | Judge:        Hon. James Ware |

DECL. OF JAMES M. FINBERG
CASE NO. 07-2813 JW

I, James M. Finberg, declare as follows:

1. I am a partner with Altshuler Berzon LLP, one of the firms serving as Plaintiff's counsel herein. I have been one of the lawyers primarily responsible for the prosecution of Plaintiff's claims on behalf of the proposed class. I make these statements based on personal knowledge and would so testify if called as a witness.

2. I am a member in good standing of the bar of the State of California, as well as the U.S. District Courts in California.

3. This Declaration is submitted in support of the Motion for an Award of Attorneys' Fees and Reimbursement of Expenses. The Altshuler Berzon LLP's firm resume is attached hereto as Exhibit A.

## My Background And Experience

4. I received a Bachelor of Arts degree, with honors in history and environmental studies, from Brown University in 1980. I received a Juris Doctor degree from the University of Chicago Law School in 1983. At the University of Chicago Law School, I was the Executive Editor of the University of Chicago Law Review.

5. From Fall 1983 through Summer 1984, I served as a law clerk to the Honorable Charles L. Levin, a Justice of the Supreme Court of the State of Michigan.

6. Since 2005, I have been listed by Best Lawyers in America as one of the best lawyers in America in the field of law and employment law. I am a fellow of the American College of Labor and Employment Lawyers. Since 2004, I have been designated by San Francisco Magazine as a Northern California "Super Lawyer," including being listed as one of the top 100 attorneys in Northern California since 2005. In 2003, I was selected by The Recorder legal newspaper (based on a survey of judges, arbitrators, mediators, and lawyers in the field) as the top plaintiff's securities litigator in the San Francisco Bay Area. In 2004, I was selected by The Recorder legal newspaper as one of the top plaintiff's employment litigators in the San Francisco Bay Area. In 2006, I was selected by The Daily Journal as one of the Top 100 lawyers in California.

DECL. OF JAMES M. FINBERG
CASE NO. 07-2813 JW

7. In 2005, I served as the President of the Bar Association of San Francisco. From 2000-2001, I served as Co-Chair of the delegation of Lawyer Representatives from the Northern District of California to the Ninth Circuit Judicial Conference. From 1997-1998, I served as co-chair of the Lawyers' Committee for Civil Rights of the San Francisco Bay Area.

8. I am a co-author of "Statistical and Other Expert Proof," in Employment Discrimination Law (4th ed., Lindemann and Grossman). I also edited the 2000 and 2002 Cumulative Supplements to Chapter 39, "Statistical Proof," of that treatise (3d ed.). I have been a contributor to *Wage and Hour Laws: A State-by-State Survey* (BNA, 2004) and to *Fair Labor Standards Act: 2004 Cumulative Supplement* (BNA, 2004).

9. I am author or co-author of the following articles, among others: Co-Author with Peder J. Thoreen, "The Use of Representative Testimony and Bifurcation of Liability and Damages in FLSA Collective Actions (ABA 2007); Co-Author with Peter E. Leckman, "Holding Customers Who Assist Securities Fraud Accountable Under State Law," Securities Litigation Report (Vol. 3, No. 5, May 2006); Author, "State Law Wage/Hour Class Actions: Alive And Well In Federal Court," ABA Labor and Employment Section 2005; Co-Author with Melissa Matheny, "A Developing Consensus: The PSLRA's 'Basis' Requirement Does Not Require the Disclosure of Confidential Sources in a Complaint," Securities Litigation Report (Vol. 2, No. 1, July/August 2005) (Glasser Legal Works). Co-Author with Chimène I. Keitner, "New Overtime Regulations Require Heightened Vigilance," San Francisco Attorney Magazine, Spring 2004; Co-Author with Chimène I. Keitner, "Summary of Proposed DOL Regulations Re FLSA Overtime Exemptions" (2003) (American Bar Association – Labor and Employment Law, Federal Labor Standards Legislation Committee Annual Report); "Title VII's Remedial Scheme: Employment Discrimination Class Actions at the Crossroads," San Francisco Attorney (August/September 2002); "Certification of Employment Discrimination Actions After The Passage of the 1991 Civil Rights Act: (b)(2) or Not (b)(2), That Is The Question*,"* Class Actions & Derivative Suits*,* Vol. 10 (March 2000); Co-Author with Joshua P. Davis, "*Allison v. Citgo Petroleum Corp*.- A Noble Retreat," Class Actions & Derivative Suits, Vol. 9, No. 1 (Winter 1999); Co-Author with Kelly Dermody, "Discovery in Employment Discrimination Class Actions," in Litigation and

Settlement of Complex Class Actions (Glasser Legal Works 1998); Co-Author with Melanie M. Piech, "The Impact of the Private Securities Litigation Reform Act: Unintended Consequences," Securities Reform Act Litigation Reporter, Vol. 6, No. 3 (Dec. 1998); Co-Author with Karen Jo Koonan, "The Importance of Anecdotal Testimony to the Jury Trial of a Title VII Class Action: Lessons from Butler v. Home Depot," Class Actions & Derivative Suits, Vol. 8, No. 3 (Summer 1998); "Northern District of California Requires Internet Posting of Pleadings And Key Briefs In Securities Actions," "Securities Reform Act Litigation Reporter" (1997); "Class Actions: Useful Devices That Promote Judicial Economy And Provide Access to Justice," 41 New York Law School Law Review 353 (1997); Co-Author (with Melvin R. Goldman), "Deposing Expert Witnesses" in Taking Depositions (ABA) (1989); Co-Author (with George C. Weickhardt), "New Push For Chemical Weapons," Bulletin of the Atomic Scientist (Nov. 1986); Comment, "The General Mining Law and The Doctrine of Pedis Possessio: The Case For Congressional Action," 49 University of Chicago Law Review 1027 (1982).

10. In the Spring Semester of 2008, I served as an Adjunct Professor of Law at the University of California, Hastings College of Law, where I taught Employment Discrimination Law.

11. During my approximately 24 years of practice, I have served as an attorney in many complex class actions. I have represented plaintiff classes in class actions in many dozens of cases, and have served as the principal, lead, or co-lead attorney representing a plaintiff class in well over a dozen cases, including the following: Butler v. Home Depot, No. C94 4335 SI (settlement of $87.5 million, plus comprehensive injunctive relief, in gender discrimination case in 1998); Rosenburg v. Int'l Bus. Machines Corp., No. CV 06-00430 PJH (N.D. Cal.) ($65 million settlement of wage and hour class and collective action in 2007); Satchell v. Federal Express Corp., C03-2659 SI; C03-2878 SI (N.D. Cal.) (settlement of $55 million, plus comprehensive injunctive relief, of race and national origin discrimination claims in 2007); Frank v. United Airlines, No. C92 0692 MJJ (N.D. Cal.) ($36.5 million gender discrimination settlement in 2004); Giannetto v. CSC Corp., No. CV 03-8201 (C.D. Cal.) ($24 million settlement of wage/hour case in 2005); Gerlach v. Wells Fargo & Co., No. 05-00585 CW (N.D.

CASE NO. 07-2813 JW

Cal.) ($12.8 million settlement of wage and hour class and collective action in 2007); <u>Trotter v. Perdue Farms</u>, Case No. 99 893 (RRM) (U.S.D.C. Del.) ($10 million settlement in wage and hour case in 2002); <u>Thomas v. CSAA</u>, No. CH217752 (Alameda County Sup. Ct.) ($8 million settlement of insurance claim adjuster overtime case in 2002); <u>Gottlieb, et al v. SBC Communications, et al.</u>, No. CV-00-4139 AHM (C.D.Cal.) ($10 million ERISA settlement in 2002); <u>Buttram v. UPS</u>, No. 97-1590 MJJ (N.D. Cal.) ($12.2 million settlement, plus comprehensive injunctive relief, of race discrimination action, in 1999); <u>Church v. Consolidated Freightways, Inc.</u>, 1993 WL149840 (N.D. Cal.) ($13.5 million settlement in age discrimination case in 1993); <u>In re California Micro Devices Securities Litigation</u>, C 94 2817 VRW (N.D. Cal.) ($26 million in settlements -- approximately 100% of losses); <u>In re Network Associates, Inc. Securities Litigation</u>, C 99 1729 WHA (N.D. Cal.) ($30 million settlement in 2001); <u>In re Mediavision Technology Securities Litigation</u>, C 94 1015 EFL (N.D. Cal.) (settlements and judgments totaling $218 million).

**Thorough Investigation And Litigation of the Class Claims in This Case**

12.   **Overview.**  Before and during the formal litigation of this action, I and my co-counsel conducted a thorough investigation into the merits of the potential claims and defenses. We focused our investigation on both the underlying merits of class members' misclassification claims – including both factual and legal issues – and the propriety of class certification.

13.   **Pre-filing investigation.**  During the pre-filing stage, my co-counsel and I interviewed a number of the defendant's technical support workers.  Those persons provided us with information regarding their job duties, the overtime hours they worked, and Cadence's organizational structure.

14.   Based on our pre-filing investigation, we prepared and filed a complaint on May 30, 2007, alleging violations of the FLSA, ERISA, and the wage and hour laws of California.

15.   **Formal Discovery and Informal Factual Investigation.**  Plaintiff's counsel engaged in four major types of factual investigation through conventional discovery.  First, we requested and reviewed thousands of pages of documents produced by Cadence.  Second, Plaintiff's counsel conducted thorough interviews of potential class members and witnesses who

had contacted us after we sent a letter to class members, using a list of names and addresses provided by Cadence. As a result of these interviews, we collected seven signed declarations from Cadence technical workers that described their duties and overtime hours worked in detail. Third, Plaintiff's counsel, with the assistance of an expert, analyzed electronic data produced by Cadence containing payroll, job position, and hours. These data consisted of identifying information, state of employment, job title, job band, salary, hours reported, dates of employment, and many other fields of data. Fourth, Plaintiff's counsel conducted the depositions of three corporate representatives of Cadence. Extensive analyses of these documents, declarations, depositions, and data enabled us to assess the strengths and weaknesses of the factual case by the time of the mediation sessions.

16. For its part, Cadence conducted written and testimonial discovery regarding, among other things, plaintiff's individual and class liability and damages claims and plaintiff's contentions regarding class and collective action certification. Plaintiff's counsel defended the all-day deposition of the named plaintiff. Plaintiff provided written responses to numerous requests for production of documents, and produced hundreds of pages of documents.

17. **Legal Analysis.** In addition to the legal analyses we conducted prior to filing the complaint, we performed a comprehensive legal analysis prior to the first mediation session. By the time of the mediation, we were fully informed about the strengths and weaknesses of the case. Plaintiff's counsel had, and continue to have, the resources necessary to effectively prosecute large-scale wage and hour class lawsuits such as the present action.

### Arms'-Length Settlement Negotiations

18. **Overview.** The formal mediation session took place in San Francisco on January 9, 2008, presided over by David Rotman, an experienced mediator of the San Francisco firm Gregorio, Haldeman, Piazza, Rotman, Frank & Feder LLP. Prior to, and during these mediation sessions, the parties exchanged comprehensive mediation briefs covering the full range of legal, factual, damages, and class certification issues.

19. **Arms'-Length negotiations.** The proposed settlement was negotiated in good faith and at arms' length. The parties vigorously pressed their positions throughout. The parties

reached an agreement in principle at the mediation, and reduced this agreement to a signed memorandum of understanding on January 9, 2008.  After that, the parties continued their negotiations, exchanging extensive iterations of comments and edits to the proposed settlement agreement, involving every material term.  These negotiations culminated in the First Amended Joint Stipulation of Class Settlement, a copy of which is attached as Exhibit 1 to the proposed April 1, 2008 Stipulated Order to Amend Class Definition and Settlement Payment in Joint Stipulation of Class Settlement and Related Documents (Docket No. 60).  The settlement creates a $7,664,856.61 common fund on behalf of 207 Cadence employees.  The anticipated average gross recovery per claimant is more than $43,000, and the anticipated average recovery net after fees, costs, service payment, payment to the State of California, the costs of settlement administration, and applicable payroll taxes exceeds $30,000 per claimant.

**Fair, Reasonable, And Adequate Settlement**

20.     In my view, the settlement constitutes a fair, reasonable, and adequate result for the class members in light of the risks, expenses, and delay of further litigation, as well as the strengths and weaknesses of the class members' claims.  Indeed, it is an outstanding settlement – the highest amount per class member of any case of which I am aware involving misclassification of technology workers.  The plan of allocation provides an appropriate weighting to each class members' claim based on the strengths of his or her claim on the merits.  I base these opinions on the extensive discovery we have performed and my experience prosecuting other large wage and hour class actions.

**Attorneys' Fees and Costs**

21.     This litigation involved risk and complexity.  The complaint alleged that Cadence had failed to pay overtime to hundreds of current and former information technology employees, who worked on a many separate job titles at many different Cadence locations. Cadence asserted several defenses, including contending that the class members diverse job titles and positions would make certifying this action as a class action difficult, and trial unmanageable.  This matter has required our firm to spend substantial sums and hours on this litigation that could have been spent on other fee-generating matters.  At various times during the litigation of this class action,

- 6 -

DECL. OF JAMES M. FINBERG
CASE NO. 07-2813 JW

this lawsuit has consumed a significant percentage of my time, along with the time of Eve H. Cervantez (a partner in my firm) and Peter E. Leckman (an associate in my firm). In addition, this case has required much work by our firm's paralegals and support staff. Altshuler Berzon LLP took the risk that we would never recovery any of this time.

22. I made every effort to litigate this action in an efficient and cost-effective manner by reducing duplication of effort and assigning work to the lowest billing timekeepers available for each task wherever feasible.

23. As of June 12, 2008, my firm had expended 386.1 hours in attorney time and 29.7 hours in paralegal and other staff time on this matter, for a total of 415.80 hours of work on the case. Attached hereto as Exhibit B is a true and correct summary by individual of the hours, billing rate, and lodestar for each biller's work on this matter through that date. Attached hereto as Exhibit C is a true and correct copy of the detailed report showing the tasks performed by each biller, in chronological order. The firm's total lodestar for these hours amounts to $192,116.50.

24. The specific work performed by my firm in prosecuting this action has included, but not been limited to: working to develop the strategy for prosecuting the claims in this case; working with co-counsel to locate, contact, and interview potential class members and witness; drafting declarations from class members and witnesses; reviewing thousands of pages of documents; conducting extensive meet and confer efforts regarding discovery issues; preparing for and taking the deposition of one of Cadence's corporate representatives pursuant to Fed. R. Civ. P. 30(b)(6); drafting correspondence; preparing for and participating in the mediation session; participating in post-mediation settlement negotiations; negotiating, drafting, and reviewing settlement documents; and assisting class members in the claims process. Throughout the course of the litigation my colleagues and I have overseen the assignment of work to attorneys, paralegals, and law clerks in my office and among co-counsel so that the necessary work would be handled as efficiently and completely as possible.

25. It is my firm's practice to maintain contemporaneous time records setting forth the amount of time spent (rounded to the nearest one-tenth of an hour) on each task and each case, and with explanatory statements regarding the actual task involved. My usual practice, and the

usual practice of the other attorneys in my firm, is to contemporaneously record through a computer program those hours that my firm would customarily bill to a commercial client paying on an hourly basis. The time logs for this matter (including all billers) have been carefully reviewed, and any biller's time that may have been duplicative or inefficient has been deleted from the billing records. While we also exercised billing judgment after recording my time in this case, and the time of other attorneys in my office (thus eliminating some of the time that had been originally recorded as an exercise of reasonable billing judgment), I also exercised billing judgment before recording my time, because I did not enter time that I thought might be duplicative, and I reduced time for work that I thought may have been inefficient.

26. My current commercial hourly rate is $750 per hour. Others within my firm who have spent time litigating this action include: (1) partner Eve Cervantez, a 1992 graduate of the Harvard Law School, whose regular commercial hourly rate is $620 per hour; (2) associate Peter E. Leckman, a 2004 graduate of UC Berkeley School of Law, whose regular commercial hourly rate is $345 per hour; and a paralegal whose regular commercial hourly rate is $195 per hour. These rates are my firm's current commercial billing rates and are supported by the extensive and specialized experience in these types of cases and recognized expertise described.

27. I have personal knowledge of the hourly rates charged by other attorneys with comparable experience to mine in the San Francisco market, as well as to the attorneys within the firm who worked on this matter. Based on that information, I believe that these rates are fully consistent with the market rate in San Francisco for attorneys with comparable expertise, experience and qualifications. Based on the information I have, I believe that the rates charged by Altshuler Berzon LLP for its partner and non-partner attorney time are reasonable and appropriate fees for San Francisco attorneys with comparable expertise, experience, and qualifications.

28. In 2007, my hourly rate was $700 per hour; that is the rate I used when submitting fee applications in employment discrimination and wage/hour class actions last year. Attached hereto as Exhibits G and H are two orders that found my 2007 hourly rate of $700 per hour to be reasonable: *Adams v. Inter-Con*, Case No. 06-cv-5428 MHP ¶5, (N.D.Cal. Feb. 26, 2008);

*Satchell v. FedEx*, case Nos. 03-cv-2659 SI; 03-cv-2878 SI, (N.D.Cal. Aug. 15, 2007) (excerpt relating to monitoring attorneys' fees).

29. In addition to using my rate of $700 per hour in fee applications last year, two clients paid me at that rate for hourly work on their behalf in 2007. In 2008, a client has paid my current commercial hourly rate of $750 per hour.

30. Our firm maintains all records regarding costs expended on each case. I have reviewed the records of costs expended in this matter. According to our records, our firm has incurred approximately $2,635.14 in costs as of May 31, 2008. This amount includes costs associated with the depositions taken in the matter, and expenses associated with the preparation, research, and filing of the pleadings filed and responded to in this matter. In addition, a week before the claims deadline, class counsel paid the claims administrator $900 to call class members who still had not filed a claim. As a result of these phone calls, an additional 22 class members filed claim forms, and thus will each be able to recover their portion of the settlement fund (in aggregate worth hundreds of thousands of dollars). My firm has not received any reimbursement for any of the monies expended to cover costs incurred. Altshuler Berzon LLP took the risk that we would not recovery any of these costs.

31. Attached hereto as Exhibit D is a chart that totals the costs incurred by Altshuler Berzon LLP, a total amount of $2,635.14. Attached hereto as Exhibit E is a chart that totals the costs incurred by Altshuler Berzon LLP and Lieff, Cabraser, Heimann & Bernstein, LLP. The costs incurred by the two firms total $45,911.17. Attached hereto as Exhibit F is a chart that totals the fees incurred by Altshuler Berzon LLP and Lieff, Cabraser, Heimann & Bernstein, LLP. The fees incurred by the two firms total $501,998.

I declare under penalty of perjury, under the laws of the United States, that the foregoing is true and correct. Executed this 19th day of June 2008, at San Francisco, California.

                                          */s/ James M. Finberg*
                                          JAMES M. FINBERG