1   KELLY M. DERMODY (SBN 171716)
    JAHAN C. SAGAFI (SBN 224887)
2   LIEFF, CABRASER, HEIMANN &
    BERNSTEIN, LLP
3   275 Battery Street, 30th Floor
    San Francisco, CA 94111-3339
4   Telephone:  (415) 956-1000
    Facsimile:  (415) 956-1008
5   E-mails: kdermody@lchb.com
            jsagafi@lchb.com
6

7   JAMES M. FINBERG (SBN 114850)        M. KIRBY C. WILCOX (SBN 78576)
    PETER E. LECKMAN (SBN 235721)        JEFFREY D. WOHL (SBN 96838)
8   ALTSHULER BERZON LLP                 MOLLY A. HARCOS (SBN 233556)
    177 Post Street, Suite 300           PAUL, HASTINGS, JANOFSKY &
9   San Francisco, CA  94108             WALKER LLP
    Telephone:  (415) 421-7151           55 Second Street, 24th Floor
10  Facsimile:  (415) 362-8064           San Francisco, California  94105
    E-mails: jfinberg@altshulerberzon.com  Telephone: (415) 856-7000
11          pleckman@altshulerberzon.com   Facsimile: (415) 856-7100
                                          E-mails: kirbywilcox@paulhastings.com
12  *Attorneys for Plaintiff and the proposed Class*   jeffwohl@paulhastings.com
                                                    mollyharcos@paulhastings.com
13
                                          *Attorneys for*
14                                        *Defendant Cadence Design Systems, Inc.*

15              UNITED STATES DISTRICT COURT

16             NORTHERN DISTRICT OF CALIFORNIA

17                  SAN JOSE DIVISION

18

19  AHMED HIGAZI, on behalf of himself      No. C-07-2813 JW
    and a class of those similarly situated,
20                                           **JOINT NOTICE OF MOTION AND**
                  Plaintiff,                 **MOTION FOR FINAL APPROVAL OF**
21                                           **CLASS ACTION SETTLEMENT;**
    v.                                       **MEMORANDUM IN SUPPORT OF**
22                                           **MOTION**
    CADENCE DESIGN SYSTEMS, INC.,
23                                           Date:       July 7, 2008
                  Defendant.                 Time:       9:00 a.m.
24                                           Courtroom: 8
                                             Judge:      Hon. James Ware
25

26

27

28

# TABLE OF CONTENTS

*Page*

Table of Authorities ................................................................................................................... ii

NOTICE OF MOTION AND MOTION ......................................................................................1

MEMORANDUM IN SUPPORT OF MOTION .........................................................................2

I.  INTRODUCTION .............................................................................................................2

II.  FACTUAL BACKGROUND ............................................................................................3

    A.  The Action. .............................................................................................................3

    B.  Preliminary Approval of the Settlement and Stipulation to Amend Settlement. ...............4

    C.  The Settlement Class...............................................................................................5

    D.  The Settlement. .......................................................................................................6

    E.  Notice Process.........................................................................................................6

        1.  The Settlement's Class notice requirements were satisfied....................................6

        2.  The notice requirements of the Class Action Fairness Act of 2005 were satisfied. ...............8

III.  THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT AND ENTER JUDGMENT IN ACCORDANCE WITH THE SETTLEMENT ......................9

    A.  The Best Practicable Notice of Settlement Has Been Provided to the Class....................9

    B.  Standard for Approval.............................................................................................10

    C.  The Settlement Should Be Presumed Fair. .............................................................11

    D.  The Overwhelmingly Positive Reaction Of The Class Supports Approval Of The Settlement. ...............12

    E.  The Settlement Was Reached Through Arms-Length Negotiations After The Parties Conducted An Extensive Investigation And Analysis........................................12

        1.  The Parties Actively Litigated Disputed Issues And Engaged In Substantial Discovery. ...............12

        2.  The Parties Participated In Arms-Length Negotiations Before An Experienced Neutral Mediator ...............14

    F.  The Value of the Settlement Favors Final Approval. .....................................................14

    G.  Litigating this Action Would Be Complex, Expensive, and Time Consuming, and Would Delay And Endanger Recovery...........................................15

    H.  The Recommendations of Experienced Counsel Favor Approval Of The Settlement. ...............15

IV.  THE COURT SHOULD GRANT FINAL CLASS CERTIFICATION AND COLLECTIVE ACTION DESIGNATION...............16

V.  CONCLUSION................................................................................................................16

# TABLE OF AUTHORITIES

*Page*

**Cases**

*7-Eleven Owners for Fair Franchising* v. *Southland Corp.*,
85 Cal. App. 4th 1135 (2000) ................................................................. 11

*Boyd v. Bechtel Corp.,*
485 F. Supp. 610, 622 (N.D. Cal. 1979) ................................................. 10

*City of Detroit v. Grinnell Corp.,*
495 F.2d 448 (2d Cir. 1974) ................................................................... 14

*Dunk* v. *Ford Motor Co.,*
48 Cal. App. 4th 1794 (1996) ................................................................. 11

*Eisen v. Carlisle & Jacquelin,*
417 U.S. 156 (1974) ................................................................................ 9

*Ellis* v. *Naval Air Rework Facility,*
87 F.R.D. 15 (N.D. Cal. 1980) ............................................................... 11

*Ellis v. Naval Air Rework Facility,*
87 F.R.D. 15, 18 (N.D. Cal. 1980) ......................................................... 11

*Hanlon v. Chrysler Corp.,*
150 F.3d 1011, 1026 (9th Cir. 1998) ...................................................... 10

*In re Prudential Sec. Inc. Ltd Partnerships Litig.,*
163 F.R.D. 200 (S.D.N.Y. 1995) ............................................................ 10

*Lynn's Food Stores, Inc. v. U.S.,*
679 F.2d 1350, 1352-53 (11th Cir. 1982) ............................................... 10

*M. Berenson Co. v. Faneuil Hall Marketplace, Inc.,*
671 F. Supp. 819 (D. Mass 1987) ........................................................... 10

*Mullane v. Central Hanover Bank & Trust Co.,*
339 U.S. 306 (1950) ................................................................................. 9

*Newman v. Stein,*
464 F.2d 689 (2d Cir. 1972) ................................................................... 10

*Newman v. Stein,*
464 F.2d 689 (2d Cir. 1972) ................................................................... 11

*Officers for Justice v. Civil Serv. Comm'n,*
688 F.2d 615 (9th Cir. 1982) ............................................................. 9, 14

*Phillips Petroleum Co. v. Shutts,*
472 U.S. 797 (1985) ................................................................................. 9

*Utility Reform Project v. Bonneville Power Admi.,*
869 F.2d 437 (9th Cir. 1989) .................................................................... 9

**NOTICE OF MOTION AND MOTION**

To the Court and all interested parties:

PLEASE TAKE NOTICE THAT that on July 7, 2008, at 9:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 8 of the Northern District of California, San Jose Division, located at 280 South First Street, San Jose, California, plaintiff Ahmed Higazi, on behalf of himself and all others similarly situated (the "Class" or "Class Members"), and defendant Cadence Design Systems, Inc. ("Cadence"), will, and hereby do, move this Court (1) to grant, pursuant to Rule 23(e), Federal Rules of Civil Procedure, final approval of the First Amended Joint Stipulation of Class Settlement and Class Settlement Agreement and Release (the "Settlement") (attached as Exhibit A to this Court's April 25, 2008, First Amended Preliminary Approval Order, Docket No. 63), and entry of judgment in accordance with the Settlement; and (2) to grant, pursuant to Rules 23(a) and 23(b)(3), Federal Rules of Civil Procedure, and section 16(b) of the Fair Labor Standards Act, 29 U.S.C. § 216(b), final class certification and collective action designation of the settlement Class conditionally certified in this Court's Preliminary Approval Order.  (Plaintiff and Cadence are called the "Parties" in this notice of motion and supporting memorandum.)

The Parties make this motion on the ground that the Settlement was reached after arms-length negotiations by the Parties, is fair and reasonable, has resulted in 88 percent of the Class Members submitting claims, has not drawn a single opt-out or objection from the Class, and should be given final approval by the Court for all the reasons set forth in the following memorandum in support of the motion.

This motion is supported by this notice; the following memorandum in support of the motion; the proposed form of the First Amended Order (1) Confirming Certification of Class and Collective Action, (2) Granting Final Approval to Class Action Settlement, and (3) Entering Final Judgment (a previous version of which was attached to the Settlement as Exhibit G, Docket No. 61); the accompanying Declarations of Jahan Sagafi and James M. Finberg in Support of Joint Motion for Final Approval of Class Settlement; the Declaration of Trae Smith Describing Settlement Administration; the Declaration of Compliance with the Class Action Fairness Act of

1     2005; the Notice of Motion and Joint Motion for Order (1) Conditionally Certifying Settlement

2     Class and Collective Action, (2) Granting Preliminary Approval to Proposed Class Action and

3     Plan of Allocation, and (3) Directing Dissemination of Class Notice and Settlement Forms to

4     Class, and (4) Setting Final Approval Hearing Date and Related Deadlines; Memorandum of

5     Points and Authorities in Support filed with the Court February 27, 2008 (Docket No. 45) and

6     supporting papers (Docket Nos. 49-52, 55); the Court's order of March 12, 2008, granting

7     preliminary approval of the settlement (Docket No. 57); the Parties' Stipulation to Amend Class

8     Definition and Settlement Payment (Docket Nos. 59-59(8)); the Court's order of April 1, 2008,

9     granting the Parties' Stipulation to Amend Class Definition and Settlement Amount (Docket No.

10     60); the Parties' First Amended Joint Stipulation of Class Settlement and Class Settlement

11     Agreement and Release (Docket No. 61) and supporting papers (Docket No. 61(1)-(8)); the

12     Court's order of April 25, 2008, granting preliminary approval of the amended Settlement

13     ("Preliminary Approval Order") (Docket No. 63); the Court's record in this action; all matters of

14     which the Court may take notice; and such other documentary and oral evidence or argument as

15     may be presented to the court at the hearing on this motion.

16                                 **MEMORANDUM IN SUPPORT OF MOTION**

17     **I.       INTRODUCTION**

18         The Parties jointly request that this Court grant final approval of their Settlement.  This

19     Settlement resolves litigation over plaintiff's and class members' claims that Cadence

20     misclassified the Class Members as exempt from federal and state overtime laws, and due to the

21     misclassification, failed to pay overtime, provide proper meal and rest periods, or pay certain

22     benefits (as a result of failing to credit the Class for their claimed unpaid wages).  The parties

23     jointly present the Settlement as the product of arms-length negotiations by experienced counsel

24     on both sides, after significant investigation, and recognition of the strengths and weaknesses of

25     each other's positions.

26         The Settlement, in the amount of $7,664,856.61 plus interest, is "fair, reasonable, and

27     adequate" within the meaning of Rule 23(e), Federal Rules of Civil Procedure 23(e).  The Class

28     has responded *extremely* favorably to the Settlement.  All 207 Class Members were sent notice

1 packets.  Of those, 182 (an impressive 88%) filed Claim Forms; none opted out, and none

2 objected.  Furthermore, Class Counsel have conducted sufficient discovery to enable them (who

3 are among the most highly experienced attorneys in the country handling overtime class actions,

4 including especially actions of this particular type, asserted on behalf of information technology

5 support workers) to evaluate the claims and defenses in the action.  Lastly, the Settlement is in

6 line with the strength and recoverability of plaintiff's claims given the risk, expense, complexity,

7 and likely duration of further litigation.  *See Staton v. Boeing Co.*, 327 F.3d 938. 960 (9th Cir.

8 2003); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992).

9        In connection with requesting final settlement approval, the Parties also request that the

10 Court confirm as final (1) the certification of the Class conditionally certified in its Preliminary

11 Approval Order; (2) the designation of the case as a collective action under the FLSA as

12 preliminarily designated in that Order; and (3) the appointment of plaintiff as the class

13 representative and of plaintiff's counsel as class counsel as initially ordered in that Order ("Class

14 Counsel").[1]

15 **II.    FACTUAL BACKGROUND**

16       **A.    The Action.**

17        On May 30, 2007, plaintiff commenced this class action against Cadence. Plaintiff

18 contends that Cadence misclassified the Class as exempt from the overtime requirements of the

19 FLSA and the wage-and-hour laws of the State of California.  (Complaint, ¶ 15, Docket No. 1.)

20 Plaintiff further asserts that, due to this alleged misclassification, Cadence violated the Employee

21 Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*  (*Id.*, ¶¶ 16-18.)

22 Specifically, plaintiff contends that certain ERISA-covered benefit plans in which he participated

23 required Cadence to provide employees with benefit credits based upon their compensation

24 earned.  (*Id.*, ¶¶ 18, 35-41.)   Plaintiff asserted that these employees should have been classified as

25 nonexempt, paid overtime, provided meal and rest breaks, and given additional benefits

26 payments.

27 [1]      Pursuant to the Settlement, plaintiff and Class Counsel are separately moving for awards of the Class Representative Payment and the Class Counsel Attorneys' Fees and Costs Payment.
28 Cadence does not oppose these motions.

1    At all points during this litigation, including in connection with the Settlement, Cadence

2    disputed, and it continues to dispute, plaintiff's allegations, expressly denying any liability for

3    any of the claims that plaintiff or the Class has raised or could have raised.  (*See generally*

4    Amended Answer to Complaint, Docket No. 41; Settlement, § II.E., F.)

5        **B.     Preliminary Approval of the Settlement and Stipulation to Amend Settlement.**

6        On March 12, 2008, this Court granted preliminary approval of the Settlement,

7    conditionally certified the Class, ordered that the Class be sent notice of the Settlement, and set a

8    schedule for final approval.  (Docket No. 52.)

9        Subsequently, the Parties realized that five job titles were inadvertently omitted from the

10   Settlement.  (Stipulation to Amend Class Definition and Payment ("Stipulation to Amend"), ¶ 2

11   (Docket No. 59).)  These five titles were variations of the class positions already included in the

12   Settlement.  (*Id.*, ¶3.)  Eleven existing Class Members held one of these titles, and no additional

13   Class Members were added to the class.  (*Id.*)  After negotiating, the Parties agreed that the

14   Settlement Fund should be increased by $164,856.61 (plus interest on that amount calculated

15   consistently with the interest calculation for the original $7,500,000 of the Settlement Fund) to

16   provide additional compensation to credit these eleven Class Members for the time during the

17   Class Period that they had worked in these new five positions.  (*Id.*, ¶ 5.)  The additional

18   $164,856.61 was derived as a *pro rata* increase to the Net Settlement Fund, with the

19   understanding that no attorneys' fees or costs would be paid from it.  (Declaration of Jahan C.

20   Sagafi in Support of Joint Motion for Final Approval of Class Action Settlement ("Sagafi Decl."),

21   ¶ 16.)  Class counsel agreed not to seek fees or costs from this additional portion.  (*Id.*, ¶ 17.)

22   Thus, the total Settlement Fund was increased to $7,664,856.61 (plus interest).  (*Id.*)  On April 1,

23   2008, the Court granted the Parties' Stipulation to Amend Class Definition and Settlement

24   Payment.  (Docket No. 60.)

25       The Parties submitted a revised set of settlement documents to the Court for preliminary

26   approval, and the Court reiterated its earlier ruling, granting preliminary approval to the revised

27   Settlement on April 25, 2008.  (*See* Preliminary Approval Motion.)  The Court determined that the

28   Settlement falls "within the range of possible settlement approval as fair, adequate, and

1   reasonable," is "the result of arms-length negotiations between the Parties," "is non-collusive,"

2   and was reached only "after Class Counsel had investigated plaintiff's claims and become

3   familiar with their strengths and weaknesses." (*Id*. at 4:20-27.)

4       **C.    The Settlement Class.**

5       As part of the Settlement, Cadence agreed to certification of the following Class:

6       All persons who work or worked for Cadence in a Covered Position during a
        Covered Period.  The class is made up of plaintiff; Raquel Candelaria, Steven
7       Michels, and Orlando Wynn (who previously have filed consents to join this
        action); and the other current and former Cadence employees who are listed by
8       their Cadence employee identification numbers in Exhibit A to the Settlement.

9   (Settlement, § I.E.)  The term "Covered Position" means one or more of the following titles in the

10  pay grade level of "T1," "T2," "T3," or "T4" held by an individual working for Cadence in the

11  United States while performing the duties of installing, maintaining, and/or supporting computer

12  hardware and/or software for Cadence's Information Technology infrastructure:

13      Associate Desktop Systems Specialist, Associate IT Remote Support Specialist,
        Associate Systems Administrator, Associate Systems Engineer, Customer Support
14      Manager, Desktop Systems Specialist, IT Remote Support Specialist, Network
        Engineer, Senior AM Systems Engineer, Senior Business Systems Analyst, Senior
15      Database Administrator, Senior Desktop Systems Specialist, Senior IT Remote
        Support Specialist, Senior Network Engineer, Senior Program Analyst, Senior
16      Staff Program Analyst, Senior Systems Administrator, Senior Systems Analyst,
        Senior Systems Engineer, Senior Web Administrator, Senior Web Technologist,
17      Staff Business Systems Analyst, Staff Database Administrator, Staff Desktop
        Systems Specialist, Staff Information Security Analyst, Staff IT Remote Support
18      Specialist, Staff Network Engineer, Staff Program Analyst, Staff Systems
        Administrator, Staff Systems Analyst, Staff Systems Engineer, Staff Telecomm
19      Engineer, Systems Administrator, Systems Analyst, Systems Engineer, and Web
        Technologist.
20
    (Settlement, § I.M.)  There are 207 Class Members.  (*Id.*, Exh. A.)  To account for the different
21
    recovery periods under the FLSA and California law, the Settlement defines the term "Covered
22
    Period" as follows: the period (1) from May 30, 2003, to the date the Court's order granting
23
    preliminary approval of the Settlement is entered, for individuals who worked in a Covered
24
    Position in the State of California; or (2) from May 30, 2004, to the date the Court's order
25
    granting preliminary approval of the Settlement is entered,, for individuals who worked in a
26
    Covered Position anywhere in the United States other than the State of California.  (Settlement, §
27
    I.L.)
28

**D.    The Settlement.**

The Settlement creates a common fund of $7,664,856.61.  (*See* Settlement at 5:12.)  In addition, Cadence is contributing interest at a rate equal to the then-current 90-day T-bill rate, beginning on April 11, 2008.  (*Id.* at 5:12-14.)  After adding the accumulated interest and deducting claims administrator's costs, the employer's share of payroll taxes,2 the Class Representative Payment, payment to the California Labor Workforce Development Agency ("LWDA") and the Class Counsel Attorneys' Fees and Costs payment, the remainder of the Settlement fund will be distributed to Class Members who have filed a timely and valid claim form ("Claim Form") on a *pro rata* basis, according to (a) the weeks worked in a Covered Position during a covered time period and (b) the extent to which those weeks were worked in California.  (*Id.* at 17:19-18:4.)3

As part of the Settlement, all Class Members who did not opt out of the Settlement ("Participating Class Members") will release Cadence from claims brought in this litigation.  As set forth in the Settlement, Participating Class Members will release all federal wage-and-hour claims, state wage-and-hour claims, unfair business practice or unfair competition claims, and benefits claims that:

> arise from any act or omission occurring on or before the Final Approval Order is entered by the Court that was taken on the basis that the Participating Class Member was misclassified as exempt under federal or state law while employed in a Covered Position during a Covered Period, including but not limited to (i) the alleged failure to pay any type of overtime wages, (ii) the alleged failure to provide meal periods and rest breaks, (iii) the alleged failure to provide itemized wage statements, or (iv) the alleged failure to provide benefits ....

*Id.* at 20-21.  The scope of these releases is fully described in the Court-approved Notice.

**E.    Notice Process.**

**1.    The Settlement's Class Notice Requirements Were Satisfied.**

---

2    For tax purposes, half of each paid Settlement Share will constitute a settlement of claims for wages and half will be deemed a settlement of claims for interest and penalties. The Settlement Administrator will issue to each claimant an IRS Form W-2 for the wage portion and a Form 1099 for the interest and penalties portion of the Settlement Share.  (Settlement at 18:4-5.)

3    Class Members will receive a multiplier of 2.7 for weeks worked in California because California law is significantly more favorable to employees than the FLSA in terms of both the method of calculation of damages and the liability standard.

1    The procedures for giving notice to the Class Members, as set forth in the Settlement and

2    ordered in the Preliminary Approval Order, have been fully and properly followed.  (*See*

3    Preliminary Approval Order, Settlement, § VII.)   The Court directed that the proposed First

4    Amended Notice of (1) Proposed Class Settlement and (2) Final Settlement Approval Hearing

5    ("Class Notice"), together with the Claim Form and Election Not to Participate in Settlement

6    Form (collectively, the "Notice Packet") (attached as Exhibits B-D to the Settlement) (Docket

7    Nos. 61(3)-(5)) to be sent to Class Members, in the manner specified by the Settlement.  (*See*

8    Preliminary Approval Order; Settlement, §VII.)

9    The Parties implemented the instructions of the Preliminary Approval Order in this regard.

10   On or about March 27, 2008, Cadence provided the settlement administrator, Settlement Services,

11   Inc. ("SSI"), with the list of the names, addresses and compensable work weeks of the Class

12   Members.  (Declaration of Trae Smith Describing Settlement Administration ("Smith Decl."), ¶

13   3.)  On or about April 4, 2008, SSI sent the Notice Packets with the individually customized

14   Notice forms to each of the 207 Class Members.  (*Id*. at ¶ 5.)  Each Claim Form listed (a) the time

15   period worked by each Class Member during the applicable Class period[s], and (b) the state in

16   which the work was performed, according to Cadence's records. Id. at 17:19-18:4.  The Notice

17   informed Class Members of their right to contest this information, with disputes resolved by the

18   Claims Administrator based on evidence provided by the Class Members and Cadence.  The

19   Notice also explained the process for objecting to the settlement and excluding oneself from the

20   settlement, along with contact information for Class Counsel and the Settlement Administrator.

21   Furthermore, pursuant to the Court's suggestion, each Notice informed the Class Member of the

22   estimated value of his or her claim, so that Class Members would be in the best position to

23   evaluate their options as to whether to participate in the Settlement or not.

24   The Parties also employed the following notice procedures to maximize the efficacy of the

25   Notice.  First, SSI used address tracing to verify the accuracy of all addresses prior to sending the

26   Notice Packets.  (*Id*. at ¶ 4.)  Second, on April 29, 2008, approximately midway into the Notice

27   period, the Settlement Administrator sent a reminder postcard to all Class Members who had not

28   submitted a Claim Form.  (*Id.*, ¶ 8.)  Third, SSI ran traces on the addresses of any returned Notice

1  Packets to again search for an updated address.  Only two were returned as undeliverable, and SSI

2  resent the Notice Packets promptly after determining their updated addresses.  (*Id.*, ¶ 7.)  Fourth,

3  on May 29, 2008 and June 3, 2008, shortly before the Claim Form postmark deadline, the

4  Settlement Administrator telephoned all Class Members who had still not submitted a Claim

5  Form to remind them of the deadline.[4]  (*Id.*, ¶ 9.)  Approximately 22 of the 47 Class Members

6  who were called subsequently submitted Claim Forms.  (*Id.*, ¶ 9.)  As a result of all of these

7  efforts, approximately 182 Class Members submitted Claim Forms by an impressive 88% of

8  Class Members.  (*Id.*, ¶ 10.)

9  ///

10      **2.    The Notice Requirements of the Class Action Fairness Act of 2005
            Were Satisfied.**

11

12      On or about March 5, 2008, in accordance with the requirements of Class Action Fairness

13  Act of 2005 ("CAFA"), counsel for Cadence caused to be mailed a letter, providing notice of the

14  scheduled preliminary approval hearing, Notice of the Proposed Settlement, the Settlement, the

15  complaint, the Notice Packet, and a complete list of the Class Members (and the estimated

16  proportionate share of the Settlement claims per state) (collectively, the "CAFA Notice

17  Materials") to the Attorney General in each of the following jurisdictions in which Class

18  Members resided at the time of preliminary approval: the States of Arizona, California, Colorado,

19  Florida, Georgia, Idaho, Massachusetts,  Maryland, Minnesota, North Carolina, New Hampshire,

20  New Jersey, New York, Oregon, Pennsylvania, Texas, Utah, Virginia, Washington, Wisconsin;

21  and the United States ("Attorneys General.")  (*See* Declaration of Compliance with the Class

22  Action Fairness Act ("CAFA Decl."), ¶¶ 3-7; March 7, 2008 Certificate of Service (Docket No.

23  53).)

24      On or about March 17, 2008, counsel for Cadence caused to be mailed a letter to the

25  Attorneys General, providing notice of the scheduled final approval hearing and related deadlines,

26  a copy of the court's March 12, 2008 Order granting preliminary approval, and a Supplemental

27  ――――――――――
[4]      Class Counsel propose that the additional cost for the phone calls be included as a cost to
28  be deducted from the settlement fund.

1    Notice of the Proposed Settlement.  (*See* CAFA Decl., ¶¶ 9-11; March 18, 2008 Certificate of

2    Service (Docket No. 58).)

3          On or about May 6, 2008, counsel for Cadence caused to be mailed a letter to the

4    Attorneys General, providing notice of the Court's April 1, 2008, order granting the Parties'

5    Stipulation to Amend, and rescheduled final approval hearing.  (*See* CAFA Decl., ¶ 14-17; May

6    7, 2008 Certificate of Service (Docket No. 64).)  Counsel for Cadence also sent the Attorneys

7    General the First Amended Order granting preliminary approval of the Settlement, and the CAFA

8    Notice Materials that had been amended pursuant to the Parties' Stipulation to Amend, including,

9    in redline, the amended settlement documents, and an updated list of the Class Members (and the

10   estimated proportionate share of the Settlement claims per state).  (*See* CAFA Decl., ¶ 14-17;

11   May 7, 2008 Certificate of Service (Docket No. 64).)

12         As of today's date, Cadence's counsel have not received any comments or objections to

13   the Settlement from any of the Attorneys General and to the best of their knowledge and belief,

14   no such comments or objections have been filed with this Court.  (CAFA Decl., ¶ 19.)

15   **III.    THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT
             AND ENTER JUDGMENT IN ACCORDANCE WITH THE SETTLEMENT**

16

17         **A.    The Best Practicable Notice of Settlement Has Been Provided to the Class.**

18         The individualized mailing of the Notice Packet to Class Members, followed by postcard

19   and telephonic reminders, and the general administration of the notice process as described above

20   meet the requirements for the "best practicable" notice in this case as necessary to protect the due

21   process rights of Class Members.  *See* Preliminary Approval Order, § VI(A) ("The Class Notice is

22   the best notice practicable under the circumstances and allows Class Members a full and fair

23   opportunity to consider the Settlement."); *see also Phillips Petroleum Co. v. Shutts*, 472 U.S. 797,

24   811-12 (1985) (provision of "best practicable" notice with description of the litigation and

25   explanation of opt-out rights satisfies due process); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156,

26   174-75 (1974) (individual notice must be sent to class members who can be identified through

27   reasonable means); *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)

28   (best practicable notice is that which is "reasonably calculated, under all the circumstances, to

LEGAL_US_W # 59219203.1
766253.1

- 9 -

JOINT NOTICE OF MOTION & MOTION FOR
FINAL APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO.  C-07-2813 JW

1    apprise interested Parties of the pendency of the action and afford them an opportunity to present

2    their objections").

3         Therefore, the Court may proceed to determine the fairness and adequacy of the

4    Settlement, and order its approval, secure in the knowledge that all absent Class Members have

5    been given the opportunity to participate fully in the claims, exclusion, and the approval process.

6         **B.    Standard for Approval.**

7         "[V]oluntary conciliation and settlement are the preferred means of dispute resolution,"

8    especially in complex class actions.  *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615,

9    625 (9th Cir. 1982); *Utility Reform Project v. Bonneville Power Admin.*, 869 F.2d 437, 443 (9th

10   Cir. 1989).  Class action lawsuits readily lend themselves to compromise because of the

11   difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation.  As a

12   result, courts should exercise their discretion to approve settlements "in recognition of the policy

13   encouraging settlement of disputed claims."  *In re Prudential Sec. Inc. Ltd Partnerships Litig.*,

14   163 F.R.D. 200, 209 (S.D.N.Y. 1995).

15        On a motion for final approval of a class action settlement under Rule 23(e), Federal

16   Rules of Civil Procedure, a court's inquiry is whether the settlement "fair, adequate and

17   reasonable," recognizing that "'it is the settlement taken as a whole, rather than the individual

18   component parts, that must be examined for overall fairness.'"  *Staton,* 327 F.3d at 960 (quoting

19   *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).  Similarly, under the FLSA, a

20   settlement that results in waiver of FLSA claims should be approved where it is "entered as part

21   of a stipulated judgment approved by the court after scrutinizing the settlement for fairness."

22   *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1352-53 (11th Cir. 1982).  A settlement is fair,

23   adequate and reasonable, and therefore merits final approval, when "the interests of the class are

24   better served by the settlement than by further litigation."  *Manual for Complex Litigation Fourth*

25   (Fed. Judicial Center 2004) ("*Manual*"), § 21.6 at 309.  "[I]n any case there is a range of

26   reasonableness with respect to a settlement ..."  *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir.

27   1972).

28        When determining whether to grant final approval, "the court's intrusion upon what is

1   otherwise a private consensual agreement negotiated between the Parties to a lawsuit must be

2   limited to the extent necessary to reach a reasoned judgment that the agreement is not the product

3   of fraud or overreaching by, or collusion between, the negotiating Parties, and that the settlement,

4   taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice*, 688 F.2d

5   at 625.  The court should balance "the strength of plaintiffs' case; the risk, expense, complexity,

6   and likely duration of further litigation; the risk of maintaining class action status throughout the

7   trial; the amount offered in settlement; the extent of discovery completed, and the state of the

8   proceedings; the experience and views of counsel...and the reaction of the class to the proposed

9   settlement." *Class Plaintiffs*, 955 F.2d at 1291.  "The recommendations of plaintiffs' counsel

10  should be given a presumption of reasonableness." *Boyd v. Bechtel Corp.,* 485 F. Supp. 610, 622

11  (N.D. Cal. 1979); *M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*, 671 F. Supp. 819 (D. Mass

12  1987); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980) ("[T]he fact that

13  experienced counsel involved in the case approved the settlement after hard-fought negotiations is

14  entitled to considerable weight.").

15          **C.      The Settlement Should Be Presumed Fair.**

16          The Court should begin its analysis with a presumption that the Settlement is fair and

17  should be approved:

18          [A] presumption of fairness exists where: (1) the settlement is reached through
            arms-length bargaining; (2) investigation and discovery are sufficient to allow
19          counsel and the court to act intelligently; (3) counsel is experienced in similar
            litigation; and (4) the percentage of objectors is small.
20

21  *Dunk* v. *Ford Motor Co.*, 48 Cal. App. 4th 1794, 1802 (1996); *7-Eleven Owners for Fair*

22  *Franchising* v. *Southland Corp.*, 85 Cal. App. 4th 1135, 1146 (2000); *accord Ellis* v. *Naval Air*

23  *Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981); *see In re*

24  *Wash. Pub. Power Supply Sys. Sec. Litig.*, 720 F. Supp. at 1387.

25          Here, all four factors are present, as discussed in more detail below.  First, the Settlement

26  was reached only after arms-length and good-faith negotiations.  As such, there is an absence of

27  any indicia of collusion.  Second, as discussed in more detail below, the Parties engaged in a

28  significant exchange of relevant data in advance of the mediation.  (*See See* Preliminary Approval

1   Motion, § II(D); Sagafi Decl., ¶¶ 5-11.)  As a result of these efforts the Parties had sufficient

2   information to evaluate the strengths and weaknesses of the Class claims and defenses, whether to

3   pursue litigation or settle, and the appropriate settlement value for the claims at issue.  Third, both

4   Class Counsel and counsel for Cadence are experienced in wage-and-hour class-action litigation,

5   acted in good faith, and both have represented their clients' best interests in reaching the

6   Settlement.  (*See* Sagafi Decl., ¶¶ 23-39.)  Finally, there have been *no* objections to the Settlement

7   by Class Members or the Attorneys Generals.  (*See* Smith Decl., ¶ 12.)  Thus, a presumption is

8   appropriate that the class relief in the Settlement is fair.  *See generally Dunk* v. *Ford Motor Co.*,

9   48 Cal. App. 4th at 1802.  Thus, the Settlement clearly falls within the "range of reasonableness."

10  *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972).

11          **D.      The Overwhelmingly Positive Reaction Of The Class Supports Approval Of
                      The Settlement.**
12

13          To date, the SSI, Class Counsel, and defense counsel have received no objections from

14  Class Members.5  (Smith Decl., ¶ 12; CAFA Decl., ¶ 19.)  No Class Members have opted out of

15  the Settlement.  (*Id.*, ¶ 11.)  These facts indicate that the Class Members overwhelmingly support

16  the Settlement and strongly favor its approval.

17          **E.      The Settlement Was Reached Through Arms-Length Negotiations After The
                      Parties Conducted An Extensive Investigation And Analysis.**
18

19                   **1.      The Parties Actively Litigated Disputed Issues and Engaged in
                              Substantial Discovery.**

20          The Parties and their counsel engaged in extensive fact-gathering, informal and formal

21  discovery, and extensive discussions of the substantive issues before finalizing the Settlement.

22  Class Counsel filed the complaint in this action after months of investigation and research by

23  Class Counsel.  Soon after the filing of the Complaint, potential Class Members contacted Class

24  Counsel, expressing their interest in participating in the action.  (Sagafi Decl., ¶ 3.)  Class

25  Counsel assisted these individuals in filing consent to join forms to formally assert their FLSA

26  claims in the collective action.  (*Id.*)  In addition, the Parties agreed to send informal notice of the

27  _____

        5       The deadline for Class Members to opt out of or object to the settlement was May 20,
28  2008.

1    action to the 207 Class Members, to allow Class Members the opportunity to learn about the

2    claims and participate if desired. (*Id.*, ¶ 4.) Notice was mailed to the Class Members by a third-

3    party administrator on or about November 20, 2007. (*Id.*)

4          During the litigation, the Parties conducted substantial formal and informal discovery.

5    Plaintiff sent Cadence a draft First Set of Document Requests and a Federal Rule of Civil

6    Procedure 30(b)(6) deposition notice on August 30, 2007, although the Parties ultimately agreed

7    to an informal document exchange. (Sagafi Decl., ¶ 5.) In September 2007, the Parties

8    exchanged initial disclosures pursuant to Federal Rule of Civil Procedure 26(a). (*Id.*, ¶ 6.)

9    Plaintiff produced 55 pages of documents as part of his initial disclosures and supplemental

10   discovery responses. (*Id.*, ¶ 7.) During the course of discovery, Cadence produced

11   approximately 2,000 pages of documents, including handbooks, manuals, policies, job

12   descriptions, and personnel information. (*Id.*) Cadence also produced voluminous electronic

13   payroll data in several iterations, amounting to approximately 31 megabytes of data. (*Id.*, ¶ 8.)

14   Plaintiff's expert analyzed these data in six separate runs, based on the revised iterations received

15   from Cadence. (*Id.*)

16         In addition, in December 2007, plaintiff conducted depositions of three of Cadence's

17   corporate representatives pursuant to Fed. R. Civ. P. 30(b)(6): (1) Dan Salisbury, Corporate Vice

18   President, Information Technology (on issues related to Class Member job duties); (2) Steve

19   Lapointe, Vice President, Global Human Resources (on issues related to the organization of the

20   information technology function at Cadence and the location of Class Members within Cadence's

21   organizational structure); and (3) Cindy Conway, Group Director of Compensation and Benefits

22   (on issues related to compensation and benefits plans). (*Id.*, ¶ 9.)

23         Cadence also conducted written and testimonial discovery regarding, among other things,

24   plaintiff's individual and class liability and damages claims and plaintiff's contentions regarding

25   class and collective action certification. (*See* Preliminary Approval Motion, § II(D).) Plaintiff

26   provided written responses to numerous requests for production of documents, and produced

27   hundreds of pages of documents. (*Id.*) Cadence also thoroughly deposed plaintiff. (*Id.*; *see also*

28   Sagafi Decl., ¶ 10.)

1    Independent of formal discovery, the Parties conducted extensive investigation of their

2    claims and defenses.  For example, Class Counsel have interviewed approximately a dozen Class

3    Members and witnesses, gathering seven sworn declarations regarding Cadence's policies and

4    practices, which were submitted to the mediator and made available to Cadence in connection

5    with the mediation efforts.  (*Id.*, ¶ 11.)

6          **2.    The Parties Participated in Arms-Length Negotiations Before an
            Experienced Neutral Mediator**

7

8    On January 9, 2008, the Parties attended a private mediation with David A. Rotman of the

9    San Francisco firm of Gregorio, Haldeman, Piazza, Rotman, Frank & Feder.  (*Id.*, ¶ 12.)

10   Beforehand, each party submitted a mediation brief to the mediator and to the other side,

11   summarizing the legal arguments and evidence gathered to date.  (*Id.*)  That evening, the Parties

12   reached an agreement, memorialized in a Memorandum of Agreement.  (*Id.*, ¶ 13.)  In the weeks

13   following the mediation, the Parties drafted, negotiated, and finalized a settlement agreement,

14   which was submitted to the Court on February 27, 2008. (Docket No.45.)  As discussed above, in

15   March of 2008, the Parties engaged in a second round of negotiations regarding the five titles that

16   were inadvertently omitted from the Settlement, and ultimately agreed to add these titles and

17   increase the Settlement amount.  (Stipulation to Amend, ¶ 2).

18         **F.    The Value of the Settlement Favors Final Approval.**

19   As set forth above, the value of the Settlement—$7,664,856.61 plus interest—is

20   substantial, and the Settlement compares very favorably to other similar class-action settlements

21   recently approved.  This is especially true in light of the strong defenses Cadence had regarding

22   the propriety of class certification and on the merits of plaintiff's claims.  *See* Preliminary

23   Approval Motion, § II(A).)  Plaintiffs faced the very real possibility that if they proceeded to trial,

24   they might obtain little if *any* recovery for the Class at all.  (*Id.*)

25   This recovery is substantial, especially as its adequacy must be judged as "'a yielding of

26   absolutes and an abandoning of highest hopes.  ...  Naturally, the agreement reached normally

27   embodies a compromise; in exchange for the saving of cost and elimination of risk, the Parties

28   each give up something they might have won had they proceeded with litigation...'"  *Officers for*

1   *Justice*, 688 F.2d at 624 (citation omitted).  Accordingly, the Settlement is not to be judged

2   against a speculative measure of what might have been achieved.  *Linney v. Cellular Alaska*

3   *P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998).  In addition, the Court should consider that the

4   Settlement provides for payment to the Class now, rather than a speculative payment many years

5   down the road.  *See City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974).

6   Therefore, the $7,664,856.61 Settlement amount is well within the range of reasonableness.

7   **G.    Litigating this Action Would Be Complex, Expensive, Time Consuming, and**
        **Would Delay and Endanger Recovery.**

8

9         As is evident from the procedural background outlined above and in the detailed

10  Settlement, this nationwide class and collective action involve intricate legal and factual questions

11  under federal and state law.  Litigating these complex claims, which arose over a period of five

12  years, would require substantial and expensive discovery and pre-trial motions, as well as the

13  consideration, preparation, and presentation of voluminous documentary and testimonial evidence

14  and the preparation and analysis of expert reports.  Trial itself could require the use of expert

15  witnesses at the damages phase, and would involve numerous complex legal and factual issues.

16  As is typical with any case, but especially so with class actions, appeals would probably follow,

17  with the result that payments to Class Members, if any, would likely occur only after several

18  years of delay.

19        In contrast, the Settlement will yield a prompt, certain, and substantial recovery for the

20  Class Members.  Such a result benefits the Parties and the court system.

21  **H.    The Recommendations of Experienced Counsel Favor Approval of the**
        **Settlement.**

22

23        The judgment of experienced counsel regarding the settlement is entitled to great weight.

24  *Boyd*, 485 F. Supp. at 622; *Hanlon,* 150 F.3d at 1026; *M. Berenson Co.*, 671 F. Supp. at 822;

25  *Ellis*, 87 F.R.D. at 18.  Here, counsel for both Parties endorse the Settlement as fair, adequate, and

26  reasonable.

27        In addition, the recommendation of Class Counsel should be given a presumption of

28  reasonableness.  *See, e.g.*, *Boyd*, 485 F. Supp. at 622.  Class Counsel have extensive experience in

1   prosecuting and litigating class action wage and hour suits like this one.  (Sagafi Decl., ¶ 48, Ex.

2   D (attaching the firm resume for Lieff, Cabraser, Heimann & Bernstein LLP); (Declaration of

3   James Finberg in Support of Joint Motion for Final Approval of Class Action Settlement, ¶ 3, Ex.

4   A (attaching the firm résumé for Altshuler Berzon LLP).)  Class Counsel have conducted

5   extensive investigation of this case, including reviewing thousands of pages of documents

6   produced by Cadence, deposing Cadence corporate representatives, reviewing Class Member

7   data, and interviewing many Class Members.  (Sagafi Decl., ¶¶ 3-11.)  The fact that qualified and

8   well-informed counsel endorse the Settlement as being fair, reasonable, and adequate heavily

9   favors this Court's approval of the Settlement.

10  **IV.    THE COURT SHOULD GRANT FINAL CLASS CERTIFICATION AND
        COLLECTIVE ACTION DESIGNATION**

11

12       The Court's Preliminary Approval Order provisionally certified the Settlement Class

13  pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure and provisionally

14  designated the case as an FLSA collective action.  (Preliminary Approval Order, §§ I-II.)  The

15  Court ruled that, for purposes of settlement, the Class meet the Rule 23 requirements as well as

16  the FLSA collective action requirements.  (*Id*.)  The Court also appointed the named plaintiff as

17  Class representative and plaintiff's counsel as Class Counsel.  (*Id*., § IV.)  No member of the

18  Class objects to any aspect of the Settlement.  For these reasons, and the reasons set forth in

19  plaintiff's motion for preliminary settlement approval, the Parties respectfully submit that the

20  Court should grant final certification and collective action designation for purposes of settlement

21  of this matter and should confirm the appointment of the class representatives and class counsel.

22  **V.     CONCLUSION**

23       The Settlement provides substantial benefits to the Class Members.  The Settlement terms

24  are fair, adequate, and reasonable.   For the reasons set forth above, the Parties respectfully

25  request that the Court (1) grant final approval of the Settlement and (2) grant final class

26  certification and collective action designation of the Settlement.

27

28

1       Date:   June 19, 2008      KELLY M. DERMODY
                                       JAHAN C. SAGAFI

2                                          LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP

3                                        JAMES M. FINBERG
                                     PETER E. LECKMAN

4                                        ALTSHULER BERZON LLP

5

6                                        By:_____*/s/ Jahan C. Sagafi*_____
                                             Jahan C. Sagafi

7                                        Attorneys for Plaintiff Ahmed Higazi and the Class
                                     Members

8

9       Date:   June 19, 2008      M. KIRBY C. WILCOX
                                         JEFFREY D. WOHL

10                                         MOLLY D. HARCOS
                                     PAUL, HASTINGS, JANOFSKY & WALKER LLP

11

12                                       By: _____*/s/ Jeffrey D. Wohl*_____
                                           Jeffrey D. Wohl

13                                         Attorneys for Defendant
                                     Cadence Design Systems, Inc.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28