Kelly M. Dermody (SBN 171716)
Jahan C. Sagafi (SBN 224887)
LIEFF, CABRASER, HEIMANN &
    BERNSTEIN, LLP
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339
Telephone:  (415) 956-1000
Facsimile:   (415) 956-1008
E-Mail: kdermody@lchb.com
E-Mail: jsagafi@lchb.com

James M. Finberg (SBN 114850)
Peter E. Leckman (SBN 235721)
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA  94108
Telephone:  (415) 421-7151
Facsimile:   (415) 362-8064
E-Mail: jfinberg@altshulerberzon.com
E-Mail: pleckman@altshulerberzon.com

*Attorneys for Plaintiff and the proposed Class*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| AHMED HIGAZI, on behalf of himself and a class of those similarly situated,<br><br>                    Plaintiff,<br><br>v.<br><br>CADENCE DESIGN SYSTEMS, INC.,<br><br>                    Defendant. | Case No.  C-07-2813 JW<br><br>**DECLARATION OF JAHAN C. SAGAFI IN SUPPORT OF (1) JOINT MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, (2) PLAINTIFF'S MOTION FOR AWARD OF ATTORNEYS' FEES, AND (3) PLAINTIFF'S MOTION FOR AWARD OF CLASS REPRESENTATIVE SERVICE PAYMENT**<br><br>Date:        July 7, 2008<br>Time:        9:00 a.m.<br>Courtroom: 8<br><br>The Honorable James Ware |

I, Jahan C. Sagafi, declare:

1.  I am a partner in Lieff, Cabraser, Heimann & Bernstein, LLP ("LCHB"), attorneys for the plaintiffs in the above-captioned class action. I make these statements based on personal knowledge and would so testify if called as a witness.

2.  This Declaration is submitted in support of the parties' Joint Motion for Final Approval of Class Action Settlement, Plaintiff's Motion For Award Of Attorneys' Fees And Reimbursement Of Expenses, and Plaintiff's Motion For Award Of Class Representative Service Payment.

## Discovery Conducted During The Litigation

3.  Soon after the filing of the Complaint, potential Class Members contacted Class Counsel, expressing their interest in participating in the action. My co-counsel and I assisted these individuals in filing consent to join forms to formally assert their FLSA claims in the collective action.

4.  The parties agreed to send informal notice of the action to the 207 Class Members, to allow Class Members the opportunity to learn about the claims and participate if desired. Notice was mailed to the Class Members by a third-party administrator on or about November 20, 2007.

5.  On August 30, 2007, Plaintiff sent Cadence a draft First Set of Document Requests and Federal Rule of Civil Procedure 30(b)(6) deposition notice.

6.  In September 2007, the Parties exchanged initial disclosures pursuant to Federal Rule of Civil Procedure 26(a).

7.  Plaintiff produced 55 pages of documents. Cadence produced approximately 2,000 pages of documents, including handbooks, manuals, policies, job descriptions, and personnel information.

8.  Cadence also produced approximately 31 megabytes of data in several separate productions. Plaintiff's expert analyzed these data in six separate runs, based on the revised iterations received from Cadence.

9.    In December 2007, Plaintiff conducted three depositions of Cadence corporate representatives pursuant to Fed. R. Civ. P. 30(b)(6):  (1) Dan Salisbury, Corporate Vice President, Information Technology (on issues related to Class Member job duties); (2) Steve Lapointe, Vice President, Global Human Resources (on issues related to the organization of the information technology function at Cadence and the location of Class Members within Cadence's organizational structure); and (3) Cindy Conway, Group Director of Compensation and Benefits (on issues related to compensation and benefits plans).

10.    Also in December 2007, Cadence took the deposition of the class representative, Ahmed Higazi.

11.    Class Counsel have interviewed approximately a dozen Class Members and witnesses, gathering seven sworn declarations regarding Cadence's policies and practices, which were submitted to the mediator and made available to Cadence in connection with the mediation efforts.

### The Mediation

12.    On January 9, 2008, the Parties attended a private mediation with David A. Rotman of the San Francisco firm of Gregorio, Haldeman, Piazza, Rotman, Frank & Feder. Beforehand, each party submitted a mediation brief to the mediator and to the other side, summarizing the legal argument and evidence gathered to date.

13.    On the evening of January 9, 2008, the parties reached an agreement, memorialized in a Memorandum of Agreement.  In the weeks following the mediation, the parties drafted, negotiated, and finalized a Settlement Agreement, which was submitted to the Court on February 27, 2008 and granted preliminary approval on March 12, 2008.

### Renegotiation Of The Settlement To Provide Additional Value To The Class Members

14.    After the settlement was granted preliminary approval, the parties realized that 11 Class Members had worked in 5 non-Class positions during the Class Period that were sufficiently similar to the 31 Class Positions to warrant inclusion in the settlement.

15.     After some negotiation, the parties agreed that the Settlement Fund should be increased by $164,856.61 (plus interest on that amount calculated consistently with the interest calculation for the original $7,500,000 of the Settlement Fund) to provide additional compensation to credit these 11 Class Members for the time during the Class Period that they had worked in these new 5 positions.

16.     The additional $164,856.61 was derived as a pro-rata increase to the Net Settlement Fund, based on the assumption that no attorneys' fees or costs would be paid from it.

17.     Class counsel agreed not to seek fees or costs from this additional portion. Thus, the total Settlement Fund was increased to $7,664,856.61 (plus interest).

**Class Member Response To The Settlement**

18.     I am aware of no communications from Class Members in this case that could be construed as objections to the settlement.  On June 13, 2008, I specifically asked Cadence's counsel and the Settlement Administrator whether they had received any such communications, and on June 13, 2008, they each responded that they too had received no such communications.

**Class Representative Ahmed Higazi's Role In Making This Litigation And Settlement Possible**

19.     In 2007, Plaintiff Ahmed Higazi approached my firm seeking legal advice as to whether Cadence had improperly classified him as exempt from the overtime pay requirements of federal and state law.  During the course of many conversations, Mr. Higazi explained his experience at Cadence in detail, including his job duties, the policies and procedures governing his work, his interactions with management, and the significant hours he had worked while at Cadence.  By a similar token, he also explained his understanding of other Class Members' job duties, hours, and work patterns.

20.     During the course of the litigation, Mr. Higazi was actively involved in assisting me and my colleagues in crafting discovery requests and deposition questions and understanding documents and data produced by Cadence in discovery.  He also assisted Class

1   Members seeking legal advice in contacting us.  Mr. Higazi and I were in regular contact about
2   the progress of the litigation and strategic issues as they arose.
3          21.    As mentioned in paragraph 10 above, Mr. Higazi sat for a deposition,
4   which lasted one full day.  He spent significant time preparing for the deposition with me.
5          22.    Mr. Higazi also attended the full-day mediation.  During the mediation, he
6   participated by discussing Cadence's arguments with my colleagues and me, which was very
7   helpful in enabling us to assess the strengths and weaknesses of their positions.
8                          **My Background And Experience**
9          23.    I graduated magna cum laude from Harvard College in 1994, where I
10  concentrated in Social Studies.  I graduated from Harvard Law School in 2001, and have
11  specialized in class actions and other complex civil litigation, principally employment, consumer,
12  and mass tort matters.
13         24.    For the first year after I graduated from law school, I clerked for the
14  Honorable William W Schwarzer, Senior Judge of the United States District Court for the
15  Northern District of California.
16         25.    Since 2002, I have practiced with Lieff, Cabraser, Heimann & Bernstein,
17  LLP, where I became a partner in January 2008.  My practice consists primarily of representing
18  class members in employment litigation (including wage and hour, employment discrimination,
19  and other employment-related disputes) as well as consumer and mass tort litigation.
20         26.    I (with other attorneys from my firm and co-counsel) served as plaintiffs'
21  counsel in *Rosenburg v. International Business Machines Corporation*, Case No. CV 06-00430
22  PJH (N.D. Cal), a case involving claims on behalf of a class of technical support workers who
23  were misclassified as exempt from the payment of overtime compensation under the FLSA and
24  the wage and hour laws of California, Colorado, Illinois, Minnesota, New Jersey, and New York.
25  On July 11, 2007, the court granted final approval of a settlement of $65,000,000.
26         27.    I served as plaintiffs' counsel in *Gerlach v. Wells Fargo & Co.*, Case No.
27  CV 05-0585 CW (N.D. Cal), a case involving claims on behalf of a class of technical support
28  workers who were misclassified as exempt from the payment of overtime compensation under the

FLSA and the wage and hour laws of California.  On January 19, 2007, the court granted final approval of a settlement of $12,800,000.

28.   I served as plaintiffs' counsel for a class of technical support workers in *Giannetto v. Computer Sciences Corporation,* 03-CV-8201 GPS (C.D. Cal.).  In that case, a class of workers classified as exempt asserted misclassification claims and sought compensation for overtime worked under the FLSA and overtime laws of 13 states.  On July 15, 2005, the court granted final approval of a settlement of $24,000,000.

29.   In 2004 and 2005, I participated in the damages phase trial of the class action *In re Farmers Ins. Group Claims Reps. Overtime Litigation*, MDL Docket No. 1439 (D. Or.), on behalf of the plaintiff class.  Judgments totaling approximately $52.5 million were entered for plaintiffs in 2005.  The Ninth Circuit has affirmed in part, reversed in part, and remanded the case to the District Court.  *In re Farmers Ins. Group Claims Reps. Overtime Litigation*, 481 F.3d 1119 (9th Cir. 2007).

30.   I served as plaintiffs' counsel in *Gonzalez v. Abercrombie & Fitch Stores, Inc.*, Case No. 03-2817 SI (N.D. Cal.), a nationwide race, color, and gender discrimination class action that resulted in a $50 million settlement on behalf of minority and female applicants and employees, with comprehensive injunctive relief in the areas of hiring, job assignment, and compensation at stores nationwide.

31.   I serve as plaintiffs' counsel in *Wynne v. McCormick & Schmick's Seafood Restaurants, Inc.*, Case No. C-06-3153 CW (N.D. Cal.), a race discrimination class action on behalf of a national class of African Americans alleging discrimination in hiring, initial job assignment, compensation and promotions.  A settlement providing extensive injunctive relief and payment of $2,000,000 was granted preliminary approval on April 4, 2008.

32.   I served as plaintiffs' counsel in *Adams v. Inter-Con*, Case No. 06-5428 MHP (N.D. Cal.), a wage and hour class action on behalf of Inter-Con Security Officers seeking compensation for time worked off the clock.  A settlement of that action providing significant injunctive relief and $4,000,000 was granted final approval on February 26, 2008.

33.     I was co-lead counsel in *Senior v. Adecco USA, Inc. d/b/a Adecco, Inc.* (San Francisco County Super. Ct. 2005); and *Hyatt v. Adecco USA, Inc. d/b/a Adecco, Inc.* (Alameda County Super. Ct. 2005), two related class actions challenging a temporary employment agency's failure to pay both its regular staff and its temporary staff earned vacation wages.  The cases together resulted in settlements of over $3.8 million.

34.     I have also successfully litigated a wide variety of complex federal and state civil matters during my professional career, including several consumer class actions.  Class action cases I have successfully prosecuted to judgment or settlement, in addition to the foregoing, include: *Strugano v. Nextel Communications, Inc.,* No. BC 288359 (Los Angeles Super. Ct.) (class action on behalf of consumers for unlawful fees and billing; settlement of $13.5-$55.5 million in benefits); *Thompson v. WFS Financial, Inc.*, No. 3-02-0570 (M.D. Tenn.); *Pakeman v. American Honda Finance Corporation*, No. 3-02-0490 (M.D. Tenn.); *Herra v. Toyota Motor Credit Corporation*, No. CGC 03-419 230 (San Francisco Super. Ct.) (all three of which were race discrimination class action settlements) (which, collectively, resulted in settlements with benefits including some or all of the following:  cash or credit payments of up to $400 per class member; broad refinancing programs reducing rates charged to existing African-American and Latino customers whose finance charge markups were 1% or more; new credit offers with finance charge markups of 0% to 1.5 million African American and Latino consumers; limits on finance charge markups on new loans of 1.75% to 2.50%; new disclosures on all contracts explaining that the interest rate may be negotiable; cy pres donations of $1.9 million).

35.     In addition to being an active litigator, I have long been involved in many educational and legal groups, including the State Bar of California (Litigation Section Executive Committee); the National Employment Lawyer's Association; the American Association for Justice (formerly the Association of Trial Lawyers of America); the Consumer Attorneys of California; the American Bar Association; the Bar Association of San Francisco; the American Constitution Society (San Francisco Bay Area Chapter Executive Committee); and the American Civil Liberties Union of Northern California (Board Member).

1

## Kelly M. Dermody's Background And Experience

2    36.    In addition to my own experience as a class-action litigator in employment

3    disputes, my partner Kelly M. Dermody also has extensive experience in class action litigation.

4    37.    Ms. Dermody graduated from Harvard College in 1990 and from the

5    University of California at Berkeley (Boalt Hall) in 1993.  She chairs the firm's employment

6    group and has extensive experience litigating plaintiff-side employment matters, including

7    overtime wage and hour class actions.

8    38.    She has represented employees in the following class actions:  *Butler v.*

9    *Home Depot*, Civ. No. C94-4335 SI (N.D. Cal.) (gender discrimination; common fund settlement

10   of $87.5 million); *Gonzalez v. Abercrombie* (see above); *Buttram v. United Parcel Service*, Civ.

11   No. C97-01590-MJJ (N.D. Cal.) (race discrimination; common fund settlement of $12.14

12   million); *Lyon v. TMP Worldwide*, Case No. 993096 (San Francisco County Super. Ct.) (overtime

13   misclassification; $1.25 million settlement); *Trotter v. Perdue Farms, Inc.*, Case No. 99-893

14   (RRM) (D. Del.) (off-the-clock; $10 million settlement); *Foster v. Great Atlantic and Pacific Tea*

15   *Co., Inc. d/b/a A&P*, Case No. 99 CV 3860 (CM) (S.D.N.Y.) (off-the-clock; $3.05 million

16   settlement); *Senior v. Adecco* and *Hyatt v. Adecco* (see above); *LaMarca v. Great Atlantic and*

17   *Pacific Tea Company, Inc. d/b/a A&P*, Case No. 04601973 (Cahn) (County of New York

18   Supreme Court) (off-the-clock; ongoing); *Amochaev v. Citigroup Global Markets, Inc., d/b/a*

19   *Smith Barney*, Case No. C-05-1298 PJH (N.D. Cal.) (gender discrimination; ongoing); *Jaffe v.*

20   *Morgan Stanley DW, Inc., d/b/a Smith Barney*, Case No. C-06-3903 EDL (N.D. Cal.) (gender

21   discrimination; ongoing); *Holloway v. Best Buy Co., Inc.*, Case No. C-05-5056 PJH (N.D. Cal.)

22   (race and gender discrimination; ongoing); *Wynne v. McCormick & Schmick's* (see above).  Ms.

23   Dermody has written and spoken extensively on employment and other matters in the context of

24   class action litigation.

25   39.    She has received numerous awards and honors; she has been named:  a

26   California Lawyer Attorney of the Year (CLAY) by *California Lawyer* in 2007; one of

27   California's "Top Women Litigators" by the *Daily Journal* in 2007; one of the *Daily Journal*'s

28   "Top 20 Lawyers Under Age 40" in 2006; a Northern California Super Lawyer (2004, 2005,

2006, 2007); the Lawyers' Committee for Civil Rights "Living the Dream Partner" (2005). She has also served as a member of various legal organizations, including as a Lawyer Representative for the Northern District of California to the Ninth Circuit Judicial Conference (2007-present); Vice Chair of the ABA Labor and Employment Law Section Annual Conference (2007-present); Co-Chair of the ABA Committee on Equal Opportunity in the Legal Profession (2006-2007); Co-Chair of the ABA Labor and Employment Law Section Equal Employment Opportunity Committee (2003-present; Midwinter Meeting Planning Committee, 2000-2006); Member of ABA Labor and Employment Law Section Katrina Task Force (2005-2007); Director of the Board of the Bar Association of San Francisco (2005-present; Litigation Section, Executive Committee, 2002-2005); Director of the Board of the Lawyers' Committee for Civil Rights of the San Francisco Bay Area (1998-2005; Secretary, 1999-2003; Co-Chair, 2003-2005); Director of the Board of the National Center for Lesbian Rights (2002-present; Board Co-Chair, 2005-2006); Director of the Board of the Pride Law Fund (1995-2002; Secretary, 1995-1997; Chairperson, 1997-2002); and Member of the Litigation Committee of Equal Rights Advocates (2000-2002).

### Attorneys' Fees And Costs Incurred By My Firm

40.    This litigation involved a significant degree of risk and complexity. The complaint alleged that Cadence had misclassified employees within and outside the corporate Information Technology department as exempt from the FLSA and state laws' overtime pay requirements. Cadence asserted several defenses, including contending that no class should be certified, that the Class Members were properly classified as exempt, and that the Class Members had not worked substantial overtime. This matter has required our firm to spend substantial sums and hours on this litigation that could have been spent on other fee-generating matters. We expended this effort without any guarantee of recovery. At various times during the litigation of this class action, this lawsuit has consumed a significant percentage of my time, along with the time of Kelly M. Dermody (whose qualifications are summarized above). In addition, this case has required much work by our firm paralegal and law clerks and support staff.

41.     I made every effort to litigate this action in an efficient and cost-effective manner by reducing duplication of effort and assigning work to the lowest billing timekeepers available for each task wherever feasible.

42.     As of June 12, 2008, my firm had expended 642.6 hours in attorney time and 166.0 hours in law clerk, paralegal, and other staff time on this matter, for a total of 808.6 hours of work on the case. Attached hereto as Exhibit A is a true and correct summary by individual of the hours, billing rate, and lodestar for each biller's work on this matter through that date. Attached hereto as Exhibit B is a true and correct copy of the detailed report showing the tasks performed by each biller, in chronological order. The firm's total lodestar for these hours amounts to $309,929.50.

43.     The specific work performed by my firm in prosecuting this action has included, but not been limited to: taking the lead in interviewing Plaintiff Higazi and resrching his claims; working to develop the strategy for prosecuting the claims in this case; taking the lead in preparing the Complaint; taking the lead in organizing the efforts of co-counsel in locating, contacting, and interviewing, and drafting declarations from Class Members and witnesses; reviewing thousands of pages of documents; conducting extensive meet and confer efforts regarding discovery and negotiation issues; preparing for and taking the deposition of Cadence's corporate representatives Dan Salisbury and Steve Lapointe pursuant to Fed. R. Civ. P. 30(b)(6); drafting correspondence; preparing for and defending the deposition of Plaintiff Higazi; preparing for and participating in the mediation session; participating in post-mediation settlement negotiations; negotiating, drafting, and reviewing settlement documents; negotiating $164,856.61 to be added to the original $7,500,000 Settlement Fund; and assisting Class Members in the claims process. Throughout the course of the litigation my colleagues and I have overseen the assignment of work to attorneys, paralegals, and law clerks in my office and among co-counsel so that the necessary work would be handled as efficiently and completely as possible.

44.     It is my firm's practice to maintain contemporaneous time records setting forth the amount of time spent (rounded to the nearest one-tenth of an hour) on each task and each case, and with explanatory statements regarding the actual task involved. My usual practice, and

the usual practice of the other attorneys in my firm, is to record on daily time logs only those hours that my firm would customarily bill to a commercial client paying on an hourly basis. The time logs for this matter (including all billers) have been carefully reviewed, and any biller's time that may have been duplicative or inefficient is deleted from the billing records. While we also exercised billing judgment after recording my time in this case, and the time of other attorneys in my office (thus eliminating some of the time that had been originally recorded as an exercise of reasonable billing judgment), I also exercised billing judgment before recording my time, because I routinely did not enter time that I thought might be duplicative, and I reduced time for work that I thought may have been inefficient.

45.    My current hourly rate is $420 per hour. Others within my firm who have spent time litigating this action include: partner Kelly M. Dermody, a 1993 graduate of the University of California at Berkeley Law School (Boalt Hall), who has been with the firm since 1994 and whose regular hourly rate is $600 per hour; a law clerk whose regular hourly rate is $180 per hour; and paralegals and other staff whose regular hourly rates are $165-275 per hour. These rates are my firm's current billing rates and are supported by the extensive and specialized experience in these types of cases and recognized expertise described.

46.    I have personal knowledge of the hourly rates charged by other attorneys with comparable experience to mine in the San Francisco market, as well as to the attorneys within the firm who worked on this matter. Based on that information, I believe that these rates are fully consistent with the market rate in San Francisco for attorneys with comparable expertise, experience and qualifications. Based on the information I have, I believe that the rates charged by Lieff, Cabraser, Heimann & Bernstein for its partner and non-partner attorney time are reasonable and appropriate fees for San Francisco attorneys with comparable expertise, experience, and qualifications.

47.    Our firm maintains all records regarding costs expended on each case. I have reviewed the records of costs expended in this matter. According to our records, our firm has incurred approximately $42,391.63 in costs as of June 12, 2008. This amount includes costs attributable to having the databases produced by Cadence analyzed by an expert, costs associated

1  with the depositions taken in the matter, and expenses associated with the preparation, research,

2  and filing of the pleadings filed and responded to in this matter.  Attached hereto as Exhibit C is a

3  true and correct summary of the costs incurred by our firm in this matter.  My firm has not

4  received any reimbursement for any of the monies expended to cover costs incurred.

5          48.    Attached hereto as Exhibit D is a true and correct copy of the LCHB firm

6  resume.

7                                    *        *        *

8          I declare, under penalty of perjury, under the laws of the State of California that

9  the foregoing is true and correct.  Executed this 19th day of June, 2008 at San Francisco,

10 California.

11

12 _____

13 JAHAN C. SAGAFI

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28